TYNER *v.* WINSLETT, tax-collector, *et al.*

*Harris, Harris & Popper* and *F. L. Clements,* for plaintiff.
*Brock, Sparks & Russell,* for defendants.

RUSSELL, C. J. Tyner was engaged in the business of operating a garage for repairing automobiles in Macon, a city of more than 35,000 inhabitants. Tyner is a disabled soldier of the late European war, and while in the performance of his duties received an injury which permanently disabled him. He draws compensation from the United States for permanent disability. He holds a certificate from the ordinary stating the fact of his being a disabled soldier of the late European war, which in addition purports to authorize him to conduct said garage business in said city of Macon without procuring a license or being subjected to any tax therefor. Nevertheless Winslett, as tax-collector, has notified him that he is delinquent, and has issued execution for $75 and 50 per cent. penalty, and is threatening to levy the same and sell Tyner's property, and also to report him to the grand jury with a view of having him prosecuted as a delinquent. Harrison as comptroller-general is the tax-collector's superior officer, to whom the tax-collector is accountable, and the tax-collector is acting upon the orders of the comptroller-general. Tyner filed a petition alleging the foregoing facts and others, and prayed: (a) That the tax-collector and comptroller-general be enjoined from levying any execution based upon paragraph 17 of section 2 of the general tax act of 1927, from taking any steps looking towards the prosecution of petitioner as a delinquent taxpayer, and from in any way interfering with petitioner's conducting his garage business in the city of Macon. (b) That it be held and decreed that petitioner is not subject to liability for said tax. The defendants demurred upon the grounds: (1) That the petition sets forth no cause of action, because the facts alleged show affirmatively that the plaintiff is not exempt from the occupation tax required of him under the general tax act of 1927 and 1929; and upon the further ground that the exemption to veterans of the World War is an exemption from city and county licenses only, and is not an exemption from the

occupation tax due the State. (2) That no facts are set forth in the petition which relieve petitioner from the obligation to pay the taxes referred to in the petition. Upon the hearing the court sustained the demurrer and dismissed the petition. The exception is to that judgment.

We are of the opinion that the petition sets forth a cause of action, and that the demurrer should have been overruled. Three questions may be said to be presented by the demurrer. (1) Does the petition itself show that the plaintiff is not exempt from the occupation tax required of him under the general tax acts of 1927 and 1929? (2) Is the exemption to veterans of the late European war merely an exemption from city and county licenses, but not an exemption from the occupation tax due the State? (3) Do the allegations of the petition set forth any facts which by law relieve the petitioner from the taxes referred to? These three questions are, as matter of law, so interdependent that a discussion of the legal principles involved in all of them may be greatly abbreviated by dealing with all the questions at the same time. In considering the questions involved in this case we have in mind that "A grant of exemption from taxation, being in derogation of the sovereign authority and of common right, must invariably be construed most strictly against the grantee, and can never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require." Sisters of Charity *v.* Corey, 73 N. J. L. 699 (65 Atl. 500). Nor do we lose sight of the fact that the General Assembly, by passing the acts to which we shall hereafter refer, perhaps deprived the State of thousands of dollars of revenue, and at the same time conferred a special preference upon veterans, which may tend to subject others to such unequal competition as may exclude them from engaging in the same business. So that justice is inclined to view with the closest scrutiny the exact terms of any exemption in favor of any class from the burden of any tax, of whatever nature it may be, to which other classes of citizens may be subject. In the instant case no question is raised as to the constitutionality of the long successive list of exemptions which have been passed from time to time by the General Assembly in favor of soldiers. Rewards of all kinds for them seem to be as much the policy of Georgia as that of any of her sister States. As said by the writer in *Burch*

v. *Ocilla,* 5 *Ga. App.* 65, 70 (62 S. E. 666), "No policy has been more tenaciously or more properly adhered to in this State than that of extending to Confederate soldiers, with proper qualifications, every possible exemption not forbidden by the constitution." The objections raised by the demurrer must stand or fall as they may be supported by the law, or as they may lack that support.

Paragraph 17 of section 2 of the general tax act of 1927 (Ga. L. 1927, p. 62) requires of every person carrying on the business of operating a garage in cities of more than 35,000 inhabitants a tax of $75. It is provided in the tax act that if the tax is not paid as and when required, execution should be issued for the amount of the tax and a penalty of 50 per cent. This is the law upon which the tax-collector and the comptroller-general stand. The law upon which the plaintiff relies for exemption is section 1888 of the Civil Code of 1910, as amended by the acts of 1918 (Ga. L. 1918, p. 116) and 1919 (Ga. L. 1919, p. 91). This section as thus amended is as follows: "*Disabled soldiers to peddle without a license.* Any disabled or indigent Confederate soldier or soldiers of the Seminole, Creek, or Cherokee Indian war, or Mexican war, Spanish-American war, or late European war, or blind person who is a resident of this State, may peddle or conduct business in any town, city, county, or counties thereof without paying license for the privilege of so doing; and a certificate from the ordinary of any county stating the facts of his being such disabled or indigent Confederate soldier, or soldiers of the Seminole, Creek, or Cherokee Indian war, or Mexican war, Spanish-American war, or the late European war, or blind person, who is a resident of this State, shall be sufficient proof," etc. Our attention is called by able counsel for the defendants to the caption of the code section, "Disabled soldiers to peddle without a license," and to the fact that section 1888 is classified in chapter 5 of the Code under the general heading "Peddling." We have no doubt both of these incidents are due to the fact that the exemption contained in the law after the close of the Civil War (Ga. L. 1866, p. 166) only referred to the business of peddling as engaged in by our Confederate soldiers. The General Assembly, in an act approved December 13, 1866 (Ga. L. 1866, p. 146), provided "That it shall be lawful for any disabled soldier of this State to peddle in any county or counties of this State without paying for license for the

privilege of so doing, and a certificate of the justices of the inferior courts of any county, stating the fact of his being such disabled soldier, shall be sufficient evidence thereof." In the Code of 1868 this act was incorporated as § 569, and it appears in the Codes of 1873 and 1882 as § 534. In the two later codes named the word "ordinary" is substituted for the term "justices of the inferior court," because the "inferior courts" had been abolished. In 1883 (Ga. L. 1882-3, p. 64) the provisions of § 534 of the Code of 1873 were amended, and as so amended the exemption theretofore given to "any disabled soldier," etc., was restricted to disabled Confederate soldiers, but the territorial limits of the act were extended so that instead of a disabled soldier being entitled to peddle in any county or counties, as set forth in the act of 1866, the act of 1883 authorized disabled Confederate soldiers "to peddle in any county or counties, towns or cities." By an act approved October 3, 1889 (Ga. L. 1889, p. 50), § 534 of the Code of 1882 was amended by inserting the words "or auction" in the second line after the word "peddle." The purport of this act was to permit disabled Confederate soldiers to auction as well as to peddle. However, the author of the bill and the General Assembly no doubt overlooked the amendment of 1883 to which we have referred, and copied into the act of 1889 the contents of § 534 of the Code of 1882 without connoting the amendment of 1883. To the same oversight must be attributed the fact that in the amendment of 1889 the words "towns and cities," which had been inserted in the original act of 1866 by the amendment of 1883, were omitted.

So that § 534 of the Code of 1882, as amended by the act of 1889, declared that it "shall be lawful for any disabled soldier of this State to peddle or auction in any county or counties thereof without paying license for the privilege of so doing; and a certificate from the ordinary of any county stating the fact of his being such disabled soldier shall be sufficient evidence thereof." By an act approved October 19, 1891 (Ga. L. 1890-91, p. 63), amending § 534 of the Code of 1882, the words "or indigent Confederate" were inserted in the second line between the word "disabled" and the word "soldier," so as to extend the benefits of the exemption to *indigent* soldiers who might not have been disabled, but the word "Confederate" was reinserted so as to restrict the operation

of the law to "disabled or indigent Confederate soldiers of this State." But in doing this the General Assembly struck out the privilege of auctioning conferred by the act of 1889. It was provided in the act of 1891, supra, so far as material to the question now before us, that it "shall be lawful for any disabled or indigent Confederate soldier of this State to peddle in any county or counties thereof without paying license for the privilege of so doing; and a certificate from the ordinary of any county stating the fact of his being such disabled or indigent Confederate soldier shall be sufficient proof," etc. It will be observed that in this amendment the General Assembly again overlooked the provision of the act approved September 26, 1883, supra, by which the disabled Confederate soldiers could peddle in "towns or cities;" the legislature no doubt being of the opinion that if disabled or indigent Confederate soldiers of this State were permitted to peddle "in any county or counties thereof," this would include all cities and towns, each of which must necessarily be included within the limits of some county or counties of the State. By an act approved December 14, 1895 (Ga. L. 1895, p. 19), § 534 of the Code of 1882 "as amended by an act of the General Assembly approved October 19, 1891," was amended so as to read "shall be lawful for any disabled or indigent Confederate soldier or soldiers of the Seminole, Creek, or Cherokee Indian wars, or Mexican war, who are residents of this State, to peddle in any county or counties thereof without paying license for the privilege of so doing; and a certificate from the ordinary of any county, stating the fact of his being such disabled or indigent Confederate soldier or soldier of the Seminole, Creek, or Cherokee Indian war, or Mexican war, who are residents of this State, shall be sufficient proof  . ."
The purpose of this amendment was to extend to soldiers of named Indian wars, and to soldiers of the Mexican war, "who are residents of this State," the same exemption from paying licenses for the privilege of peddling which had theretofore been given to Confederate soldiers. This act appears as § 1642 of the Code of 1895. So far, the code sections related to peddling and to no other form of business. Section 1642 of the Code of 1895 was amended by an act approved December 9, 1897 (Ga. L. 1897, p. 24), by allowing all the soldiers named not only to peddle, but also to "conduct business in any town, city, county or counties

thereof" without paying license. In this amended form, § 1642 of the Code of 1895 was embodied as § 1888 of the Code of 1910. In 1918 (Ga. L. 1918, p. 116) Code § 1888 was so amended as to extend its benefits to include blind persons. Finally, by an act approved August 18, 1919 (Ga. L. 1919, p. 91), the General Assembly amended § 1888 of the Code of 1910 so as to include soldiers of the Spanish American war and the late European war.

The legal meaning of the word "peddle" was comprehensively stated and explained in *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754, 756-7 (11 S. E. 233, 8 L. R. A. 273). The court said: "Only the person who itinerates for trading purposes is a peddler. . . One whose vocation is to go from place to place with a sample stove carried upon a wagon, exhibit the sample and procure orders which his employer afterwards fills by delivering through other agents the stoves so ordered, is a peddler within the meaning of the Code of Georgia." In that case a corporation of Missouri, and Lee, a resident of Virginia, denied that either of them was a peddler of stoves or ranges or was liable to pay for a license as a peddler to the ordinary under § 1631 of the then code; and they prayed for an injunction to prevent the ordinary and the sheriff from proceeding against them, and that the execution be canceled, upon the ground that so far as § 1631 of the code applied to them it was unconstitutional and contravened article 1, section 1, paragraph 3, of the constitution of the United States. The denial of the injunction was reversed by this court. It is true that the ruling in that case was based upon the decisions of the Supreme Court of the United States in Robbins *v.* Shelby County Taxing Dist., 120 U. S. 489 (7 Sup. Ct. 592, 30 L. ed. 694), and Asher *v.* Texas, 128 U. S. 129 (9 Sup. Ct. 1, 32 L. ed. 368). In those two cases the Supreme Court of the United States held that the statutes of two States were obnoxious to the interstate-commerce clause of the constitution of the United States, and void for that conflict, in so far as they extend to the soliciting of orders and making of sales by and for a non-resident of a State within which the business required to be licensed is transacted. In *Gould* v. *Atlanta,* 55 *Ga.* 678, there was no attempt at a distinct definition of the term "peddle," but many times in the course of the opinion Judge Bleckley used the words "peddle" and "itinerant trader" as synonymous. He said: "Suppose a citizen peddles his wares

through the city, is he not an itinerant trader?" Likewise, § 1886 of the Code of 1910 similarly defines the word "peddle" by saying "Every peddler or itinerant trader, by sample or otherwise, must," etc.

One of the first questions to be settled in this case is whether § 1888 of the Code of 1910, as amended, relates solely to a burden placed by municipalities or counties, or whether that section refers to and includes occupation taxes imposed by the State. It is asserted by demurrer that the provisions of § 1888 as amended refer only to municipal or county taxes, and therefore that the plaintiff in this case is liable to the tax specified in paragraph 17 of section 2 of the tax act of 1927, and, ergo, the court was correct in sustaining the demurrer to the petition for injunction.. The plaintiff contends that the exemption from license tax, provided by the terms of § 1888 of the Code as amended, protects him from the collection of the license tax, and exempts him from personal liability for the amount of the tax, as well as from criminal liability. He therefore insists that his petition set forth a cause of action, and that it should not have been dismissed upon demurrer, and, on the contrary, that the court should have restrained the collection of a license tax from which he is protected by an express exemption. The defendants call the attention of the court to the fact that § 1888, as embraced in our Code, is classified in article 4, chapter 5, under the general heading "peddling," and refers to the fact that § 1888, under the caption "License to peddle," relates only to a county license for which application must be made to the ordinary of each county and is granted on terms imposed by the ordinary. The tax authorized by § 1886 is such as the ordinary may deem advisable, is to be used for county purposes, and the license extends only to the limits of the county. Section 1887 of the Code of 1910 reads: "*Exceptions.*—None of the provisions of this Article shall extend to persons selling the agricultural products of any State, nor to persons selling agricultural implements, nor to persons engaged in the manufacturing and selling of jugs and flower-pots within the State of Georgia." This section was taken from an act passed in 1887 (Ga. L. 1887, p. 33). This act was passed subsequently to the incorporation of § 1886, which was formerly § 1631 of the Code of 1882, and is an amendment thereof by which the operation of all of the provisions

of article 4 of chapter 5 are excluded in their effect upon persons selling agricultural products, persons selling agricultural implements, and persons engaged in the manufacture or sale of jugs and flower-pots.

The plaintiff is alleged to be a disabled soldier of the late European war, in which, while in the performance of his duty, he received an injury which disabled him permanently. It is alleged: "Petitioner holds a certificate from the ordinary of Bibb County, Georgia, stating the facts of his being such·disabled soldier of the late European war. This certificate was issued May 7, 1928, and, in addition to certifying that petitioner is such disabled soldier of the world war, it purports to authorize petitioner to conduct said garage business in said city of Macon without procuring a license or being subjected to any tax therefor." He further sets up that "Under section 1888 of the Civil Code of Georgia, as amended by the acts of the General Assembly approved August 19, 1918, and August 18, 1919, respectively, petitioner has the right to conduct said business in said city of Macon without paying any license for the privilege of so doing, and is exempt from the imposition of any license tax upon said business, and is not liable to pay the tax referred to in the next paragraph, because to require petitioner to pay a tax would be to require petitioner to pay a license for the privilege of conducting said business." At this point two questions arise: (1) Are the enactments to which we have referred merely regulations which only affect county government, or does § 1888, as a consolidation of the various previous enactments and as amended by the act of 1919, become a matter of direction and regulation as a statewide proposition? In other words, does § 1888 have reference solely to county taxes as authorized by law as a source of county income, or is the law statewide in its operation as a mere vehicle conveying to a designated class of our citizens relief from the burden of a license tax to which this class might otherwise be subject, and thereby, by the exercise of a power inherent in the State government, exempting the designated class of soldiers from the payment of any license tax in peddling or conducting business? (2) Even if it be conceded that the laws exempting first soldiers, then Confederate soldiers, first disabled soldiers and later indigent soldiers whether disabled or not, were at first merely intended as a matter of county regula-

tion, is it not within the power of the State government to withdraw at its pleasure any power which it has conferred upon its creature, the subordinate county government? We shall deal with these questions in their reverse order. Conceding that the original act of the General Assembly as contained in the Code of 1868, and as carried forward into the Codes of 1873 and 1882, was intended to apply to county revenues, and to licenses upon which the county was authorized to impose taxes or to exempt, as the county authority might think advisable, this fact would not, in our opinion, preclude the State from at any time exercising its paramount jurisdiction—the sovereign power of the State—either to exercise concurrent jurisdiction with the subordinate division known as a county, or to exercise sole jurisdiction by withdrawing from the county the right of taxation in any particular instance. In several tax acts in recent years may be noticed instances where the General Assembly have imposed special or occupation taxes, as a source of revenue for the State, upon classes which have heretofore been subject to county taxation, and have imposed license taxes collectible by the State and for the use of the State only as a source of revenue. In many instances where such occupational tax levies were imposed, the General Assembly has expressly forbidden that any taxation upon the same subject-matter by either municipal or county authorities should be imposed or collected. Ga. L. 1920, p. 17, sec. 1; Ga. L. Ex. Sess. 1923, p. 22, par. 3; Ib. p. 28, par. 21-A.

The original act of 1866 embodied in § 569 of the Code of 1868, which merely exempted soldiers from paying a county tax for the privilege of peddling, has been very greatly changed by the numerous amendments which have been pointed out, and by reason of this and other changes in our law upon the subject of taxation the present code section 1888 has been subjected to a complete metamorphosis. Properly construed, § 1888, as altered and amended from time to time by the acts of the General Assembly to which we have referred, can not be classed as a revenue measure for the benefit of counties or of the State. It can not be classed as a law applicable alone to peddlers as such, because the statute exempts disabled and indigent soldiers of named Indian wars, the Mexican war, Confederate soldiers, and soldiers of the late European war, as well as of the Spanish American war, from all specific

taxes, not only upon peddling but upon any business in which any member of this favored class engages. The change in the original legislative intention as expressed in § 569 of the Code of 1868 is recorded in various stages of the gradual evolution evidenced by the legislative acts cited. In addition to this, in the passage of the general tax acts of 1927 (Ga. L. 1927, p. 82, par. 84), and of 1929 (Ga. L. 1929, p. 62, par. 9), the General Assembly placed a specific occupation tax upon peddlers, which confirms our opinion that the General Assembly had the inherent power, if it wished to do so, to exempt all the members of the classes of soldiers mentioned in § 1888 from the burden of any specific license tax upon any other business in which the soldier might wish to engage, as well as peddling. In this view of the case the plaintiff is exempted from the payment of a specific tax upon his business, which chances to be the operation of a garage. Therefore we must answer the first suggested question by holding that § 1888, properly construed in the light of the various amendments which have been engrafted upon and incorporated into § 569 of the Code of 1868 and continued as § 534 in the Codes of 1873 and 1882, and as § 1642 in the Code of 1895, and finally amended by the act of 1919, imposes a statewide regulation which forbids, as a matter of sound public policy and in the exercise of the power of reasonable classification, that disabled and indigent soldiers who in any of the named wars have served the country should be subject to *any* occupation tax within the limits of the State of Georgia. Section 1888 of the Code of 1910, it is true, had its origin in § 569 of the Code of 1868. At that time and subsequently thereto, the effect of the act was confined to the result effected by its operation in a county. But by process of legislative evolution, and especially by the adoption of paragraph 84 of section 2 of the tax act of 1927, supra, section 1888 of the Code has become a mandatory exemption, statewide in its operation, designed as a vehicle to convey to a designated class protection from the burden of a license tax to which disabled and indigent soldiers in the late European war would be subject, in common with their fellow citizens of the State, but for the creation of the designated class—those who were soldiers and blind persons. The court erred in sustaining the demurrer and dismissing the action.

*Judgment reversed. All the Justices concur, except Atkinson and Hines, JJ., who dissent.*