CLEMENTS, tax receiver, *et al. v.* PEERLESS WOOLEN MILLS.

No. 14720. JANUARY 5, 1944. REHEARING DENIED FEBRUARY 11, 1944.

298

*G. W. Langford, Rosser & Rosser,* and *Arnold, Gambrell & Arnold,* for plaintiffs in error.

*Gleason & Painter, Matthews, Owens & Maddox,* and *Shaw & Shaw,* contra.

WYATT, Justice. (After stating the foregoing facts.) The plaintiffs in error in their brief, in discussing the direction of the verdict, after stating there was no basis for controversy as to whether the property was grossly undervalued, say: "But even if the question of gross undervaluation had been in dispute, it would have been a jury question, and the court would have had no right to decide it as a matter of law against the tax receiver and tax collector." This statement is correct. Since the petition raised the question that the value of the property as fixed by the tax receiver was excessive and out of proportion to the value placed upon the property of other taxpayers of Walker County, it follows that there was no error in overruling the general demurrer under the law as

it existed at the time the ruling was made on October 27, 1942, that date being previous to the passage of the act of the legislature approved February 11, 1943 (Ga. L. 1943, p. 243). The special demurrers, on examination, are found to be without merit.

The defendant in error in its brief abandons the constitutional attack, made in its petition, on the act of 1918, under which the tax receiver purported to act in making the assessment. Therefore we are now called upon to pass upon the validity of the act of 1943 (Ga. L. 1943, p. 243), in so far as the same denies to the tax collector and the tax receiver the right to collect their commissions on the taxes assessed by the tax receiver previously to the passage of the act as involved in the instant case. The act of 1918, set out in the Code, §§ 92-6701 et seq., as here applicable, provides that the tax receiver, in a case where the property owner grossly undervalues his property in his tax return, shall notify such taxpayer of his delinquency, requiring that a return shall be made thereof within twenty days, and upon the taxpayer's failure or refusal to do so, the tax receiver shall assess such property for taxation from the best information he can obtain as to its value. This was the procedure followed by the tax receiver in the present case.

The act of 1937 (Ga. L. 1937, p. 517), amending the then existing law (Ga. L. 1913, pp. 123, 125) with reference to tax assessments, placed the duty upon the county board of tax assessors to receive and inspect tax returns laid before them by the tax receiver, and "if in the opinion of the board any taxpayer has omitted from his returns any property that should be returned, or has failed to return any of his property at a just and fair valuation, the board shall correct such returns and shall assess and fix the just and fair valuation to be placed on the property and shall make a note thereof and attach the same to the returns." Code, § 92-6911.

It is apparent that the duties and authority of the tax receiver, under the provisions of the act of 1918 (Ga. L. 1918, p. 232, Code, §§ 92-6701 et seq.), and the duties and authority of the county board of tax assessors, under the provisions of the act of 1937, are almost identical. The act of 1943 amended chapter 92-67 of the Code of Georgia, this being the chapter which imposes upon the tax receiver the duty in respect to delinquent taxpayers above referred to by adding thereto the following: "Provided, further, if the county board of tax assessors has previously passed upon

the assessment of this same property for the years involved, then any reassessment of this property heretofore or hereafter made by the tax receiver under this chapter, shall be void." And by adding a new section as follows: "In all cases where additional or deficiency assessments are made, or have heretofore been made, by county tax receivers or tax commissioners as provided in said chapter, such assessments or additional assessments shall be presented to the board of tax assessors of the county wherein such assessment is made, and such board of tax assessors shall by majority thereof determine, amend or disapprove such assessments in writing." It will be observed that the purpose of this act was to fix and define a final authority in fixing such tax assessments, and to remove the confusion and uncertainty of the finality of such assessments theretofore existing under the terms of the acts of 1918 and 1937.

The tax receiver and tax collector attack the retrospective character of this law as it operates to prevent the collection of their commissions on the amount of tax set forth in the execution that was issued and levied before the act of 1943 was enacted. They contend that they have a vested right in the commissions on the tax represented by the execution which had been levied that can not be destroyed or impaired by legislative act. The law fixing compensation of tax receivers and tax collectors for the collection of State and county taxes denominates such compensation as "commissions." Code, §§ 92-5301 et seq. Webster defines commissions in the sense here used as "the compensation accruing to the agent or factor; usually a percentage of the value handled by him." "'Commissions' is a word without technical meaning, but, when used to express compensation for services rendered, it usually denotes a percentage on the amount of moneys paid out or received. . . 'Commissions' within statute providing that county collector in counties under township organization shall be allowed 'commission' of two per cent. on railroad taxes, means compensation of two per cent. payable from tax collected." 7 Words and Phrases, 817. The Code, § 92-8002, provides that "Tax collectors shall be allowed a fee of 50 cents for issuing tax executions; but no tax collector, sheriff, or constable shall receive costs on said executions, unless the same shall be collected from the defendant." When two counties are engaged in litigation over the question as to which is entitled to collect any particular tax, the law postpones payment of

commissions to the tax receiver and tax collector until after the tax has been actually collected and it has been determined which county is entitled to the tax. Code, § 92-6224. Therefore the intention of the legislature clearly appears to have been that tax receivers and tax collectors are entitled to commissions only on such taxes as are actually collected. As applied to tax collectors, the law in this respect is definite. Code, § 92-5304.

There can be no question about the right of a State to waive liens or taxes in behalf of itself or its subdivision, so long as the waiver applies to all persons alike. *Tyner* v. *Winslett,* 174 *Ga.* 267 (162 S. E. 807). This right, however, can not be exercised by the State when the effect of such action will be to infringe upon a lien to which a transferee has become entitled under previous law. *Morris* v. *Interstate Bond Co.,* 180 *Ga.* 689 (180 S. E. 819, 100 A. L. R. 415), and cit. The plaintiffs in error make the contention that, but for the temporary restraining order granted by the court, the tax, and therefore the commissions involved, would have been collected before the act of 1943 was enacted. However, since it is within the power of the legislature to waive a tax, or lien for taxes, if the waiver is one of equal application, the mere fact that the tax would have been collected previously to the effective date of the waiver but for the interposition of a judicial restraint at the instance of the taxpayer claiming immunity from the tax for other alleged reasons, can not operate to give a tax receiver or tax collector a vested right for commissions on the uncollected forgiven tax; and this is true, notwithstanding the execution already issued for the tax had been levied on property of the taxpayer, such levy not having the effect of increasing the dignity of the lien for taxes existing under the law before the issuance of the execution. The ex parte issuance of the execution and its subsequent levy was not tantamount to a final determination that the tax was legally collectible if the taxpayer chose to protest its payment, and avail itself of the legal machinery provided for contesting its validity. "Until final judgment the policy of the law is to preserve the status." *Harris* v. *Gano,* 117 *Ga.* 934, 936 (44 S. E. 11). We conclude from what has been said above that tax receivers and tax collectors are entitled to collect their commissions when, and not until, the tax has been collected from the taxpayer. Before the tax is collected the tax receiver and tax collector have no such vested in-

terest in their commissions on uncollected taxes, although execution has been issued and levied, as will prevent the State by legislative act from waiving such tax, including the commissions of such officers, so long as the legislative act is general and uniform, applying to all taxpayers alike. This may be done even though the legislative act is retroactive in nature. In the case of *Jordan* v. *Baynes,* 48 *Ga.* 462, it was held that, "Pending the proceedings by scire facias against the securities on a bond given for the appearance of a prisoner who was charged with the offense of murder, an act of the General Assembly was passed relieving the securities from liability on the payment of the costs. The solicitor-general had no vested right in the bond to the amount of five per cent. of which the General Assembly could not deprive him." In commenting upon the contention of the solicitor-general that he had a vested right to the amount of five per cent. of the sum due under the bond, the court said: "This was a debt due to the State, and not a debt due to the solicitor-general, either in his official capacity or otherwise, and being a debt due to the State, it was competent for the General Assembly to relieve the securities from the payment of it on such terms as they might deem proper." See generally, in this connection, *Woodburn* v. *Western Union Telegraph Co.,* 95 *Ga.* 808 (23 S. E. 116); *Western Union Telegraph Co.* v. *Smith,* 96 *Ga.* 569 (23 S. E. 899); *Wall* v. *Morris,* 149 *Ga.* 632 (101 S. E. 683). It follows that the act of 1943 (Ga. L. 1943, p. 243), contravenes no provision of the State or Federal constitutions, and there was no error in overruling the general demurrer, nor was there error in directing a verdict for the plaintiff and enjoining the defendants from proceeding with the collection of the tax. The motion for new trial was properly overruled.

*Judgment affirmed. All the Justices concur, except Duckworth, J., who dissents, and Jenkins, P. J., absent on account of illness.*

DUCKWORTH, Justice, dissenting. I dissent from the judgment of affirmance because in my opinion the act of 1943 (Ga. L. 1943, p. 243) is unconstitutional as applied to the tax receiver and the tax collector of Walker County, as contended by them, in that it violates the provision of the constitution (Code, § 2-302), that "no . . retroactive law . . shall be passed," my reasons being set forth in my dissenting opinion in *State Highway Department* v. *Bass,* 197 *Ga.* 356 (29 S. E. 2d, 161).