[Civil No. 322.   Filed January 30, 1892.]

[31 Pac. 521, *sub. nom.* Behan *v.* Board of Prison Commrs.]

## JOHN H. BEHAN, Petitioner, v. W. C. DAVIS et al., Respondents.

1. OFFICERS—SUPERINTENDENT OF TERRITORIAL PRISON—APPOINTED BY GOVERNOR WITH CONSENT OF ASSEMBLY—REV. STATS. U. S., SEC. 1857 (ORGANIC ACT, REV. STATS. ARIZ. 1901, PAR. 23), CITED.—The office of superintendent of the territorial prison is within the provisions of the statute, *supra,* and may only be filled by nomination by the governor and assent thereto by the legislative council.

2. SAME—SALARY—DE FACTO OFFICER—WHEN ENTITLED TO COMPENSATION FROM TERRITORY.—An officer *de facto,* but not *de jure,* there being no *de jure* officer is entitled to the emoluments of the office of which he is actually the incumbent.

Original Application for mandamus. Writ allowed.

W. H. Barnes, Webster Street, and H. N. Alexander, for Petitioner.

Clark Churchill, Attorney-General, for Respondents.

KIBBEY, J.—This is an application made to this court by John H. Behan for a writ of mandate to compel the board of prison commissioners to audit and allow his claim for services alleged to have been performed by him as superintendent of the territorial prison. The compensation for such services is fixed by statute by way of salary. Preliminary to a statement of the facts, a *résumé* of the statutory provisions affecting the question presented for our consideration is necessary. The act of March 10, 1887, (Rev. Stats. 1887, sec. 2417 et seq.) provides for the general management of the territorial prison by a board of territorial prison commissioners. By section 2421 they are required to appoint a superintendent for the territorial prison, who shall hold his office for a period of two years, unless sooner removed by the board for misconduct, incompetency, or neglect of duty. That section further provides that the superintendent shall receive for his services seven hundred and fifty dollars per quarter. By section 2432 it is made the duty of the board of prison commissioners to audit all accounts quarterly, and approve them if they be found correct, and cause them to be certified to the territorial auditor. Upon such certificate the auditor issues his warrant upon the territorial treasurer. His duties are defined by statute. Section 1857 of the Revised Statutes of the United States, (being a part of our organic act,) provides that all township, district, and county officers, except justices of the peace and general officers of the militia, shall be appointed or elected in such manner as may be provided by the governor and legislative assembly; and all other officers, not herein otherwise provided for, the governor shall nominate, and, by and with the consent of the legislative council, appoint. In

the district court in and for Maricopa County, in a proceeding
in the nature of *quo warranto,* a judgment was on the eight-
eenth day of June, 1890, at the suit of the attorney-general of
the territory, rendered against Behan, ousting him from the
office of superintendent of the territorial prison. The district
court held—and in this court, so far as the consideration of
this case is concerned, it has not been disputed—that the office
of superintendent of the territorial prison was within the
provisions of section 1857 of the Revised Statutes of the
United States, before quoted, and accordingly could only
legally be filled by nomination by the governor and assent
thereto by the legislative council. Prior to the bringing of
the suit in the district court by the attorney-general against
Behan, it had been the practice that the superintendent should
be appointed by the board of prison commissioners, and the
legality of that practice up to the time of the judgment of
ouster against Behan seems to have been unquestioned. On
the ninth day of April, 1889, in pursuance of the practice
theretofore prevailing, the board of prison commissioners
appointed Behan superintendent of the territorial prison.
Behan thereupon qualified, and entered upon the discharge
of his duties, and continued therein until the 5th or 6th of
July of the following year, when, pursuant to the judgment
of ouster on the *quo warranto* proceedings, he surrendered
the office. There was during that interval a rival board of
prison commissioners, which, by resolution dated in October,
1889, attempted to remove Behan, and appoint a successor.
It is not necessary here to determine which of the rival boards
was the legal board. It is sufficient to say that on the 9th of
April, 1889, the board that appointed Behan was the *de facto*
board. No question is made as to the validity of their acts,
within their power made at that time. It appears that the
board that sought to remove Behan did so without notice to
him of any charge of misconduct, incompetency, or neglect.
We think he was entitled to such notice before the board could
remove him, and that their resolution removing him was, in
any event, therefore abortive. Frank Ingalls, was by one of
the rival boards, in October, 1889, appointed superintendent
of the prison. Of course, this appointment, under the ruling
in the case in the district court of the attorney-general against

Behan, was invalid. Ingalls was, however, on the twenty-fourth day of May, 1890, appointed to the office of superintendent of the prison by the governor of the territory, the legislative council then being at recess, and duly qualified for his office on the twenty-seventh day of May, 1890. From the ninth day of April, 1889, the day of his appointment by the board, until the twenty-seventh day of May, 1890, the date of the appointment of Ingalls by the governor, and his qualification therefor, Behan was *de facto* superintendent of the prison, and, as such, discharged all the duties thereof, and there was in that interval no *de jure* superintendent. It is this interval for which Behan claims his salary. The only question, then, that is presented to us is: Is an officer *de facto* but not *de jure*, there being no *de jure* officer, entitled to the emoluments of the office of which he was actually the incumbent? Counsel, and as well the court, have made diligent search of the books, and no authority in point has been found; indeed, none analogous. It is almost elementary that the right to the emoluments of an office are incident to the title to the office; that, as between an officer *de facto* and one *de jure, notwithstanding the de facto* officer may have performed all the duties of the office, the *de jure* officer is entitled to the legal compensation; and the reason is obvious. A usurper of any office should not be permitted to avail himself of his own wrongful act of usurpation to deprive him who is rightfully entitled to the office of his emoluments. The contrary rule would directly encourage usurpation of office. It is hardly necessary to cite authorities for this proposition. It is not here denied by counsel for the applicant. The question here presented, however, is essentially different. There is in this case no dispute as to the title to the office; no adverse contestant for it. There is no *de jure* officer. There can be but one *de facto* officer, and he is here asking the process of this court to secure his compensation of superintendent of the territorial prison from April 9, 1889, to the date of the appointment and qualification of his successor by the governor.

There is a stipulation on file, whereby the territory shall be allowed certain credits. Subject to these, a peremptory writ of *mandamus* will go as prayed.

Gooding, C. J., and Wells, J., concur.

NOTE.—The opinion of the court in this case was delivered orally by Kibbey, J., at the January term, 1891. The written opinion was filed at the January term, 1892, there having been no intervening term of the court.