[Civil No. 4025. Filed November 28, 1938.]

[84 Pac. (2d) 581.]

TOWN OF SOUTH TUCSON, a Municipal Corporation, Appellant, v. THE BOARD OF SUPERVISORS OF PIMA COUNTY, and WARREN GROSSETTA, J. B. MEAD and R. H. MARTIN, Members Thereof, and R. G. DARROW, Appellees.

576

Mr. Harry O. Juliani and Mr. John L. Van Buskirk, for Appellant.

Mr. Joseph B. Judge, County Attorney, Mr. Alfred Ronstadt, his Chief Deputy, for Appellee Board of Supervisors and Members; Messrs. Misbaugh & Fickett, Messrs. Krucker & Fowler, Messrs. Darrow & Diehl, for Appellee R. G. Darrow.

LOCKWOOD, J.—This is an action by the Town of South Tucson, a municipal corporation, hereinafter called plaintiff, against the Board of Supervisors of

Pima County, and the individual members thereof, and one R. G. Darrow, hereinafter called defendants, seeking injunctive relief restraining the defendants from meddling with the municipal functions of the Town of South Tucson, or seizing, taking, or dealing with any of the property of the municipality. The case came on for trial before the court sitting with a jury, and at the close of plaintiff's evidence, defendants moved that the case be withdrawn from the jury and judgment entered in favor of the defendants, which motion was granted, and thereafter this appeal was taken.

The situation out of which the action arose may be stated as follows: Plaintiff was a municipal corporation organized under the provisions of chapter 86, of the Session Laws of 1931, which reads as follows:

"An Act to provide for the incorporation of cities and towns.

"Be It enacted by the Legislature of the State of Arizona:

"Section 1. Sec. 367, Revised Code, 1928, is hereby amended to read as follows:

"Sec. 367. *Proceedings for Incorporation.* Whenever two-thirds of the real property taxpayers residing in any city or town, containing a population of five hundred or more inhabitants, shall petition the board of supervisors, setting forth the metes and bounds of such city or town, and the name whereby such petitioners desire to be incorporated, and praying for the incorporation of such city or town, and the board shall be satisfied that two-thirds of the real property taxpayers residing in such city or town have signed such petition, it shall, by an order to be entered of record, declare such city or town incorporated. Whenever ten per centum of the real property taxpayers residing in any city or town containing a population of five hundred or more inhabitants shall in like manner petition the board of supervisors, praying for the calling of an election, the board shall within sixty days after the filing of said petition call such election, and only real property taxpayers who shall also in all respects be

qualified electors of the state and of said city or town, shall vote thereat. If a majority of the real property taxpayers voting at said election shall vote for incorporation, then the board of supervisors shall, by an order to be entered of record, declare such city or town incorporated. By whichever proceeding the incorporation of such city or town shall have been accomplished, such order shall designate the name of the city or town, and the metes and bounds thereof, and thereafter the inhabitants within the area so defined shall be a body politic and corporate, by the name designated."

The procedure followed in the organization was that set forth in the statute to be used when ten per cent. of the real property owners petition for incorporation. The voters, at the election held in pursuance of chapter 86, *supra,* favored incorporation, and the incorporation order was made by the board of supervisors August 10, 1936. Thereafter, and on the 18th day of January, 1938, a petition was filed with the board, signed by a number of persons claiming to be residents and taxpayers within the said town, requesting that the board disincorporate it. The only provision of our code in regard to disincorporation of towns at that time was section 385, Revised Code 1928, which reads as follows:

"Disincorporation. The county supervisors of the county in which any such town is situated, may, upon the petition of two-thirds of those persons paying a property tax within such town, in the year preceding, and residing within such town, disincorporate such town, and appoint a trustee with authority to wind up the affairs of the corporation, sell and convey its property, real and personal, pay the debts of the town, and return the surplus of the proceeds of the property of the town into the county treasury, to be there disposed of for the improvement of roads in the vicinity wherein such town is situated."

The order disincorporating was in the following language:

"The board received a petition signed by two hundred and fifty-eight (258) taxpayers for the purpose of disincorporating the town of South Tucson.

"It appears to the Board that the petition to disincorporate the Town of South Tucson is in proper form, and it is our opinion that it contains two-thirds of those persons paying a property tax within such town, in the year preceding, and residing within such town. It is therefore moved by Mr. Mead and seconded by Mr. Martin, to disincorporate such Town and appoint a Trustee, R. G. Darrow, C. P. A., with authority to wind up the affairs of the corporation in accordance with provisions of Section 385 of the Revised Code of Arizona."

Thereafter this action was brought.

Plaintiff, by its pleadings, claimed that the resolution disincorporating the town was made without jurisdiction, on the ground that the petition was insufficient on its face, and further that the signatures thereto were not sufficient under the statute to authorize the board to act. Issue was joined on these allegations, and the court held the petition to be sufficient on its face, but permitted plaintiff to offer evidence as to whether or not there were the requisite number of signatures, and after the evidence was concluded, held that sufficient legal evidence had not been offered to show that the petition did not have the requisite number of legal signers, and rendered judgment in favor of defendants. Thereafter a motion for new trial was presented and argued fully. This motion raised again the question of the sufficiency of the petition on its face and the rulings of the court in regard to the sufficiency of the evidence to show that the requisite number of taxpayers had not signed the petition, and also raised, for the first time, the question of the constitutionality of section 385, *supra*, on the ground that it impaired the obligation of contracts, in that it did not provide a method for paying the debts of the municipality disincorporated thereunder, in event

that the assets of the town were insufficient to cover its obligations.

On this appeal all of the questions raised during the trial of the case, and on the motion for new trial, were properly presented by assignments of error, and it was also urged for the first time that the provisions of section 385, *supra,* did not apply to towns organized under chapter 86, *supra,* and that the section was unconstitutional for the additional reason that it attempted to confer judicial power on the board of supervisors, in the appointment of a trustee who was vested with power to adjudicate claims against the town and pass on titles to real property, in violation of section 6, article 6, and article 3 of the Constitution of Arizona.

The objections raised by plaintiff may be divided into three groups. The first goes to the constitutionality and applicability of the disincorporation statute, sec. 385, *supra*; the second raises the question of the sufficiency of the petition for disincorporation on its face to confer jurisdiction upon the supervisors to act; and the third covers the point of whether sufficient competent evidence was offered by plaintiff to raise an issue for submission to the jury as to whether the requisite number of taxpayers and residents had signed the petition.

Defendants urge that the constitutional questions raised by plaintiff in its assignments of error may not be considered by us for the reason that they are first presented on appeal, and that the rule of this court is that questions not raised in the lower court may not be raised for the first time in an appellate tribunal. Plaintiff admits the general rule to be as stated by defendants, but claims that it is inapplicable to the present case for the reason that there are certain exceptions to the general rule under which it contends these questions fall, and also that while the issue of

constitutionality was not raised by the pleadings in the original action, it was presented to the trial court and argued on the motion for new trial, and that this brings it within the general rule.

It is true that as a general proposition an appellate court will not consider a question not first raised in the lower court, but this is merely a rule of procedure, and not a matter of jurisdiction. As was said by the Supreme Court of Wisconsin, in the case of *Cappon* v. *O'Day*, 165 Wis. 486, 162 N. W. 655, 657, 1 A. L. R. 1657:

" . . . For the purpose of orderly administration and the attainment of justice, certain rules are established. Any rule the enforcement of which results in a failure of justice should be carefully scrutinized and not blindly adhered to unless the abandonment of it will work more injustice than will follow if it be adhered to. One of the rules of well-nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the trial court will not be reviewed on appeal. 3 C. J. 689. The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof. In such circumstances, therefore, for the appellate court to take up and decide on an incomplete record questions raised before it for the first time would, in many instances at least, result in great injustice, and for that reason appellate courts ordinarily decline to review questions raised for the first time in the appellate court. But to this rule there are many exceptions. Questions as to the jurisdiction of the court may be raised. *Telford* v. *City of Ashland*, 100 Wis. 238, 75 N. W. 1006. . . . There are numerous other exceptions. 3 C. J. 740. No question of the power of this court is involved. Whether this court should review a question raised here for the first time depends upon the facts and circumstances disclosed by the particular record. It undoubtedly has the power, but ordinarily will not exercise it. The question is one of ad-

ministration, not of power. The statements in [*Re*] *Brandon's Will,* 164 Wis. 387, 160 N. W. 177, and *Ritter* v. *Ritter,* 100 Wis. 468, 76 N. W. 347, to the effect that questions not brought up in the court below cannot be considered here, must be considered as statements of the general rule, to which there are exceptions as here indicated."

One of the exceptions to the rule is questions of a general public nature, affecting the interests of the state at large, and this is particularly true when the question raised for the first time is one of substantive law which is not affected by any dispute as to the facts of the case, for under such circumstances the parties may present the issue as thoroughly in the appellate court as it could have been presented below without injury to either one.

 The question as to whether the disincorporation statute is constitutional is one of considerable importance to the state, as a matter of public policy. There are other municipalities which have been disincorporated in the past, and more which may desire disincorporation in the future. If the only statute which now authorizes such action is unconstitutional or unworkable, it is well that the question should be determined in advance of any other efforts at disincorporation, so that the legislature may correct any defects which exist in the present law before serious questions arise affecting other municipalities. We can see no reason why a failure of plaintiff to raise the issue in the lower court in the slightest degree hampers defendants in presenting it fully before this tribunal. We consider, therefore, the various constitutional questions raised, as being within the exception to the general rule above stated.

These objections are three in number. The first is that section 385, *supra,* under which plaintiff was disincorporated, does not apply to municipalities organ-

ized under chapter 86, *supra*. Upon an examination of the last-named chapter, it will be observed that it is an amendment of section 367, Revised Code 1928, which was the original statute providing for the incorporation of towns under the general law, first adopted in 1901, and brought forward in the codes of 1913 and 1928. This section originally provided that incorporation should be made by the board of supervisors acting on the petition of two-thirds of the "taxable inhabitants" of the town. The amended section contained the same method of incorporation, but required that the petition be made by two-thirds of the "real property taxpayers" instead of the "taxable inhabitants," and added a second method of incorporation by means of a special election held on the petition of ten per cent. of such taxpayers.

It is the contention of plaintiff that the language of section 385, *supra,* refers only to towns incorporated under section 367, *supra,* as it originally existed, and that when a different method of incorporation was substituted, the legislature, by failing to provide affirmatively that the existing method of disincorporation should apply to towns incorporated under the new act, meant by implication that it should not. It bases its principal argument on the grammatical rule of the last antecedent. We have previously held that the clear intent of the legislature takes precedence as a canon of construction of all grammatical rules, and particularly of this one. *Federal Mut. Liability Ins. Co.* v. *Industrial Com.,* 31 Ariz. 224, 252 Pac. 512. We think the argument is more plausible than tenable. Chapter 86, *supra,* does not add a new section to the code, but amends an already existing section by changing its language. Had the legislature intended to create a new class of towns which should be independent of any of the existing provisions of the code, its natural course would have been to enact a new law,

and not to amend an already existing section which was part of a chapter regulating towns generally. We think that the only reasonable implication to be drawn from such action by the legislature is that it intended every provision of chapter 12 of the Revised Code of 1928, which is the general municipal law of the state and of which chapter section 367 was an integral and essential part, to apply with the same force to towns incorporated under the amended section 367 as it does to those organized under the original section, in so far as its terms can be made applicable, and that the disincorporation method set forth in section 385, *supra,* applied to plaintiff.

The second constitutional objection is that section 385 conferred judicial powers upon the board of supervisors. The argument is that the trustee appointed to wind up the affairs of the town is, in essence, a ''receiver,'' and that receivers can only be appointed by some court. The trustee mentioned by the act is not in a position analogous to a receiver appointed by a court of equity, but is rather like the receiver mentioned by this court in *Crandall* v. *Town of Safford,* 47 Ariz. 402, 56 Pac. (2d) 660, who takes charge of the property of a town as the trustee for its creditors, and such appointment in no manner confers judicial power upon him nor deprives the courts of any of their jurisdiction. Any person dissatisfied with the actions of the trustee may bring a proper proceeding in the courts, in the same manner as he could against a trustee appointed by will or by an agreement of parties, and the trustee is bound to follow out the orders of the court in all respects. We think the objection that the board of supervisors, in the appointment of a trustee, was exercising judicial power, or that the trustee had any judicial power, is unsound.

The third objection is that section 385, *supra,* does not provide for what shall be done in case the

assets of the town are insufficient to pay its debts. If it appeared from the record herein that the Town of South Tucson was insolvent and had valid bonds or obligations outstanding which the assets of the town were not sufficient to pay, and creditors were objecting to the disincorporation, a serious question might, indeed, be raised, but it is the general rule that only those who are injured by the unconstitutional provisions of a statute may raise such objections to its constitutionality. *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 34 Sup. Ct. 359, 58 L. Ed. 713; *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537; *State Tax Com.* v. *Board of Supervisors,* 43 Ariz. 156, 29 Pac. (2d) 733. The complaint in the present case denies that plaintiff is insolvent or unable to pay its debts, and alleges, on the contrary, after setting up that accusations had been made that it was insolvent, as follows:

" . . . in truth and in fact the said Town was solvent and had money and property assets in the approximate total of $5000.00."

Under the rule above stated, we think plaintiff is not in a position to make the contention that section 385, *supra,* is unconstitutional because the rights of creditors are not properly protected by the law.

The next question is as to the sufficiency of the petition on its face to give the board of supervisors jurisdiction to make the disincorporation order. Upon examining section 385, *supra,* it appears that the legislature has not provided any particular form for petitions, and particularly that it does not require specifically that the petition allege that those signing comprise a two-thirds majority of the property taxpayers and residents of the town. It also clearly appears from the order of the board above set forth that it found affirmatively that the signers of the petition

did constitute such a majority. It is urged on behalf of plaintiff that this court has held in the case of *Kenney* v. *Bank of Miami,* 19 Ariz. 338, 170 Pac. 866, that somewhere in the petition such fact must appear, or the board has no jurisdiction to make the order. We have examined the case cited carefully, and we think plaintiff has reached a conclusion not sustained thereby. That proceeding, as this, was one for disincorporation under what is now section 385, *supra.* It does not appear whether or not the petition did state that it was signed by two-thirds of the property taxpayers, but it does show that the board of supervisors found affirmatively (p. 341):

" 'That said petition contains the signatures of more than two-thirds of the persons paying property tax within said town of Miami under the provisions of chapter 2, tit. 7, of the Revised Statutes of Arizona in the preceding year and residing within such town, and such is found to be the fact.' "

The contention on the part of the trustee was that this finding of the board of supervisors was conclusive, and not subject to review. We considered this contention carefully, and held that while the statute in regard to incorporation of towns made the finding of the board conclusive that two-thirds of the taxable inhabitants had joined in the petition for incorporation, the one providing for disincorporation left the sufficiency of the number of signers open to attack in a proper proceeding, such as this, but nowhere therein did we say anything in regard to what averments *in the petition* were required to give the board jurisdiction to act.

Counsel for both plaintiff and defendant have cited to us a number of cases, which they claim bear on the question, such as *Stephens* v. *School Dist.,* 104 Ark. 145, 148 S. W. 504; *Hughes* v. *Special School Dist.,* 135 Ark. 454, 205 S. W. 824; *Frederick* v. *City of San Luis Obispo,* 118 Cal. 391, 50 Pac. 661; *School Dist. No.*

*94* v. *Thompson,* 27 N. D. 459, 146 N. W. 727, and some others. After a careful reading and comparison of the cases cited, we are of the opinion that there is little difference between them in their conclusion as to the general rule of law, their holding apparently being that somewhere it must appear affirmatively that the requisite number of signers were attached to the petition, but that this does not need to appear in the petition if it is found elsewhere in the record. This is in harmony with the general rule that in the absence of a statutory provision to the contrary, petitions addressed to public bodies are not construed as formally and technically as are pleadings in a court of law. This conclusion is borne out by our statement in the case of *Kenney* v. *Bank of Miami, supra,* as follows:

" . . . The resolution, not appearing to be void on its face, should be taken as valid and of binding force and effect until impeached for fraud or want of jurisdiction."

We hold, therefore, that the petition, when taken in connection with the resolution of the board of supervisors authorizing the disincorporation, made a *prima facie* showing of jurisdiction, and the resolution should be taken as valid and of binding force and effect, subject, however, to the right of plaintiff to impeach it for fraud or lack of jurisdiction by showing that it lacked the necessary number of signatures.

We come then to the last and most strenuously argued question in the case, which is whether or not plaintiff produced sufficient evidence on this point to go to the jury. Under the law, as stated by us, it was necessary for it to show (a) the number of those qualified to sign such a petition in the Town of South Tucson on the 18th day of January, 1938, and (b) that the signatures attached to the petition for disincorporation did not represent two-thirds of that

number. The method in which plaintiff attempted to meet the burden of proof resting upon it was by offering in evidence various records of the assessor's and treasurer's office of Pima county. It was contended by it that under section 4454, Revised Code 1928, which reads as follows:

"*Records of public officials; of notaries.* The records required to be made, and kept by a public officer of the state, county, municipality or of any body politic, and copies thereof certified under the hand and seal (if there be one) of the legal custodians of such records, . . . shall be received in evidence by the courts of the state as *prima facie* evidence of the facts therein stated,"

the records of these offices were *prima facie* evidence of all the facts stated therein, and that the records offered by them showed that a certain number of persons fell within the provisions of section 385, *supra,* as being both "persons paying a property tax within such town in the year preceding" and also "residing within such town" for the reason that the records show on their face (a) that a certain number of persons paid a property tax in the Town of South Tucson, and (b) that they resided within the limits of said town.

We have construed the meaning of section 4454, *supra,* in the case of *Sovereign Camp, W. O. W.,* v. *Sandoval,* 47 Ariz. 167, 54 Pac. (2d) 557, and have stated (pp. 171, 172):

" . . . Section 4454, Rev. Code of 1928, also provides that the records required to be made and kept by a public officer of a state, county, municipality, or of any body politic, and copies thereof certified, 'shall be received in evidence by the courts of the state as *prima facie* evidence of the facts therein stated.' We think there is no question that, under these sections of the Code, the certified copy of a death certificate, duly filed with the state board of health as required by law, is admissible in evidence as *prima facie* proof of all the facts which the law requires to appear in such

certificate, provided, of course, that such facts bear upon one of the material issues of the case being tried. *California State Life Ins. Co.* v. *Fuqua*, 40 Ariz. 148, 10 Pac. (2d) 958; *Security Benefit Assn.* v. *Small*, 34 Ariz. 458, 272 Pac. 647; *Bozicevich* v. *Kenilworth Merc. Co.*, 58 Utah, 458, 199 Pac. 406, 17 A. L. R. 346; *Ohmeyer* v. *Supreme Forest Woodmen Circle*, 91 Mo. App. 189; *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 52 Atl. 490.''

This is a distinct holding that a public record is *prima facie* evidence of certain facts, but it specifically limits the facts of which it is evidence to ''all the facts which the law requires to appear in such certificate.'' In other words, the facts of which a public record is *prima facie* evidence are limited to those which the law affirmatively requires the record to state, and do not include other matters which may be included in the record by the keeper for his own personal information or for other reasons. Section 3083, Revised Code 1928, states very specifically exactly what the assessor is required to show by his assessment roll. The section is lengthy and we need not set it forth, but nowhere therein is the residence of the taxpayer required to be stated nor the location of any particular personal property. Such being the case, the assessment roll offered by plaintiff was, indeed, evidence as to the location of any real estate mentioned therein, but not of the residence of the owner, and section 385, *supra,* requires that, in order to be eligible to sign a petition for disincorporation, one must not merely pay a property tax within the town, but must reside therein. If this be true, admittedly plaintiff has failed to show the number of persons eligible to sign a disincorporation petition and, therefore, has necessarily failed to show the number required in order to make such a petition confer jurisdiction upon the board of supervisors.

Counsel for plaintiff have made a very ingenious argument that they may deduce from the fact that 254 persons (or 258 as contended by defendant) signed the petition, the number within the town who are actually eligible to do so. We have examined the argument with care, but have failed to be convinced thereby. The 258 names might represent either exactly two-thirds, or much more than that proportion of those qualified to sign, so far as anything appearing in the record is concerned.

We think the trial court was correct in concluding that plaintiff had failed to present sufficient evidence to authorize a jury to find that the petition in question was not signed by the proper percentage of property taxpayers and residents of South Tucson. This being the case, the action of the court, in taking the case from the jury and rendering judgment for defendants, was correct.

Judgment affirmed.

McALISTER, C. J., and ROSS, J., concur.