[Civil No. 4282.   Filed February 17, 1941.]

[110 Pac. (2d) 216.]

R. G. DARROW, as Trustee of the Town of South
Tucson, Appellant, v. JOHN L. VAN BUSKIRK,
Appellee.

Messrs. Misbaugh & Fickett, Messrs. Krucker & Fowler and Mr. H. C. Diehl, Jr., for Appellant.

Mr. H. O. Juliani and Mr. John L. Van Buskirk, for Appellee.

ROSS, J.—The Town of South Tucson was, on January 18, 1938, by an order of the Board of Supervisors of Pima county, disincorporated. In the same order

the board appointed R. G. Darrow trustee with authority, as provided in section 16–219, Arizona Code, 1939,

"to wind up the *affairs* of the corporation, sell and convey its property, real and personal, *pay the debts of the town,* and return the surplus of the proceeds of the property of the town into the county treasury, to be there disposed of for the improvement of roads in the vicinity wherein such town is situated." (Italics ours.)

The town brought an action in the superior court of said county against the board of supervisors contesting the order of disincorporation and in such action John L. Van Buskirk, with the town's regular attorney, represented the town. They also represented the town in the Supreme Court on appeal. *Town of South Tucson* v. *Board of Supervisors,* 52 Ariz. 575, 84 Pac. (2d) 581.

This is an action by attorney Van Buskirk for compensation for his services to the town in resisting the order of disincorporation, and in some other litigation subsequent to such order. He alleges in his complaint an agreed fee of one thousand dollars, also that one thousand dollars was the reasonable value of his services. The court gave him judgment for that amount, and the trustee has appealed.

Defendant admits that the plaintiff rendered the services for which he claims compensation and makes no point upon the *quantum* allowed but (1) denies the power of the town to employ plaintiff after it was disincorporated. He also defends on the ground (2) that none of the assets in his hands was budgeted by the town to pay for the services of an attorney during 1938–1939 to assist the town attorney in litigation against the town. Also, under 'his general denial, he claims (3) the evidence shows plaintiff was never em-

ployed in accordance with the requirements of the town's charter and ordinances.

▮ It should be observed that the trustee's power is limited. He has authority under the statute to wind up the town's affairs and to that end may sell its prop-. erty and "pay the debts of the town." If there is any surplus after its debts are paid, it is to be paid into the county treasury and used for the improvement of roads in the vicinity of the town's location. Those persons to whom the town owed "debts" when it was ordered disincorporated, the trustee may pay, but, as we construe this provision of the statute, he was given no authority to pay "debts" contracted by the town through its mayor and council after the order of disincorporation.

▮▮ If the town through its officers wanted to contest the order of disincorporation, as we have held in *Kenney* v. *Bank of Miami,* 19 Ariz. 338, 170 Pac. 866, and in *Town of South Tucson* v. *Board of Supervisors, supra,* it had that right, but the statute does not require the trustee to finance such litigation out of the town's assets. He can pay only the debts of the town that it owed when its "affairs" were turned over to him. The town's assets being a trust fund to be devoted to a specific purpose, the trustee would have no authority or right to use the fund for any other purpose. Of course the court will, in its discretion, allow the trustee to incur debts for the protection and preservation of the property and make reasonable allowances therefor, but no one but the court would have that power. We take it that a statutory trustee, like other trustees, is bound by the limitations placed upon him in the order or instrument appointing him.

"It is an elementary principle in the law of trusts that in the execution of a trust, the trustee is bound to comply strictly with the directions contained in the trust instrument, defining the extent and limits of his

authority, and the nature of his powers and duties.
. . . '' 26 R. C. L. 1372, sec. 232.

■ In cases of this kind there are two interested
parties, those against disincorporation and those in
favor of it. It would seem that if the former may con-
tract debts to be paid out of the town's assets in re-
sisting the order of disincorporation, the latter might
also contract debts in support of such order to be paid
out of the assets. The law is that neither can encum-
ber the assets in the hands of the trustee. The only
person that may do so is the trustee, and his authority
must be obtained from or approved by the court.

■ If the court had held the order of the board of
supervisors disincorporating the town null and void
for lack of jurisdiction in the board to make it, or on
account of fraud in procuring the order, it would pre-
sent a different question for in that case there would
not have been at any time a dissolution of the town
and the order appointing the trustee also would have
been ineffectual for any purpose. The court having
decided, in *Town of South Tucson* v. *Board of Su-
pervisors, supra,* in favor of the board's order disin-
corporating the town, the litigation thereafter testing
the legality of the board's order did not have the effect
of resuscitating or revitalizing the town. *Follett* v.
*Sheldon,* 195 Ind. 510, 144 N. E. 867; *Oklahoma Natural
Gas Co.* v. *State of Oklahoma,* 273 U. S. 257, 47 Sup.
Ct. 391, 71 L. Ed. 634; *Sharp* v. *Eagle Lake Lumber
Co.,* 60 Cal. App. 386, 212 Pac. 933.

■ Under this court's decision, South Tucson was
effectively and legally disincorporated on January 18,
1938, by the order of the board of supervisors and,
while its officers in its name might contest the order,
they could not incur debts binding upon its assets in
the hands and possession of the statutory trustee.
The judgment affirmed in the above case (*Town of*

*South Tucson* v. *Board of Supervisors*) held that the order disincorporating the town "is valid, binding and of full legal force and effect and has been since its adoption on the 18th day of January, 1938."

But plaintiff claims the contract for his services was entered into January 17, 1938, and relies upon a resolution of the town council in these words, to sustain such contention:

"It was moved by Councilman Werner and seconded by Councilman Nora W. Norton and unanimously carried that the movement for disincorporation of the Town of South Tucson be contested and that the Town Attorney is instructed to litigate said matter in the courts and that the Town Attorney be and he is hereby authorized to engage such legal assistance as he may deem necessary, and that these services as well as extra legal services rendered by the Town Attorney in the past and in connection with the litigation aforementioned be charged against the Town of South Tucson."

This resolution was passed at a special meeting of the town council at which two members were absent. There are serious doubts as to whether the meeting was called and noticed as provided by the town's ordinances. The trial judge in his written decision has this to say of such meeting:

"The Town Trustees or Council in their official capacity resolved in extraordinary session not called in the manner prescribed by the town's Ordinances to resist the petition to disincorporate and in extraordinary session met and for the Town formally employed the plaintiff to combat the movement."

But granting that the meeting was regularly called and noticed, we do not think the resolution was a contract of employment. We think the authority conferred on the town's regular attorney "to engage such legal assistance as he may deem necessary" was limited to the selection of an attorney or attorneys

agreeable to himself, but the authority to fix the terms and conditions of such person's or persons' employment was a matter for the town council, to be passed upon at a regular or special meeting after such selection was made and reported. On January 18th the order of disincorporation was passed. At that time the council had not employed Van Buskirk although he had been consulted and retained by the town's attorney on the night of January 17th. His employment by the town's attorney was recognized later when, on February 16, 1938, at a special meeting of the town council, this resolution was adopted: "A motion was made by Councilman Norton to ratify the employment of Mr. Van Buskirk as legal assistant to Mr. Juliani. Motion seconded and carried."

Clearly plaintiff was not employed by the town's council on the 17th of January as contended, and while the acceptance of his services after that date might be considered a ratification in the ordinary case, it could not in this case for the reason that his claimed client had passed out of existence on the 18th. Nor was the resolution of February 16th effective as a ratification for the reason that the town on that date was, by the decision of this court, nonexistent.

"The general rule seems to be well established that the relation of attorney and client is terminated by the death of the client. . . . Just as the death of the client terminates the relation of attorney and client, so the dissolution of a corporation or partnership terminates such relation and revokes the authority of the attorney." 2 R. C. L. 959, sec. 31.

We find it unnecessary to pass upon the point as to whether the budget permitted the employment or not.

The judgment of the lower court is reversed and the cause remanded with directions to dismiss the complaint.

LOCKWOOD, C. J., and McALISTER, J., concur.