[Civil No. 4352. Filed December 1, 1941.]

[119 Pac. (2d) 565.]

HARRY O. JULIANI, Appellant, v. R. G. DARROW, Trustee of the Town of South Tucson, Appellee.

Mr. John L. Van Buskirk and Mr. Harry O. Juliani, for Appellant.

Messrs. Misbaugh & Fickett, Messrs. Krucker & Fowler and Mr. H. C. Diehl, Jr., for Appellee.

McALISTER, J.—This is an action by Harry O. Juliani against R. G. Darrow, trustee of the Town of South Tucson, to recover his salary as attorney for that municipality for the period, January 1, 1938, to November 28, 1938, and from a judgment for the defendant he appeals. The parties will be referred to hereafter as plaintiff and defendant.

The Town of South Tucson became a municipal corporation on August 10, 1936, by an order of the board of supervisors of Pima County, made pursuant to the provisions of section 16–201, Arizona Code 1939, but by an order of the same board entered in accordance with the provisions of section 16–219, Arizona Code 1939, it was disincorporated on January 18, 1938, and a trustee, R. G. Darrow, defendant, appointed with authority "to wind up the affairs of the corporation, sell and convey its property, real and personal, pay the debts of the town, and return the surplus of the proceeds of the property of the town into the county treasury, to be there disposed of for the improvement of roads in the vicinity wherein such town is situated."

The town contested the order of disincorporation by an action against the board of supervisors in the Superior Court of Pima County in which it also asked for and secured an order restraining the board and the trustee, Darrow, from interfering with the town's

municipal functions pending its decision. On April 23, 1938, the superior court rendered a judgment upholding the order of disincorporation. That judgment was immediately taken to the Supreme Court for review and on November 28, 1938, was affirmed. *Town of South Tucson* v. *Board of Supervisors,* 52 Ariz. 575, 84 Pac. (2d) 581. The complaint alleges that from January 18, 1938, the day the order of disincorporation was entered, up to the date of action by the Supreme Court, the Town of South Tucson carried on its normal municipal functions.

The plaintiff, the town's regular attorney, and John L. Van Buskirk represented it in that case in both courts and also looked after other litigation for it which arose subsequent to the order of disincorporation. The plaintiff alleges that he was attorney for the municipality from June 26, 1937, to November 28, 1938, and that his salary was $50 per month until June 30, 1938, when it was set at $75 per month. He further avers that he was paid for all of this period except that from January 1 to November 28, 1938, during which he earned $670. It is this balance he seeks to recover.

Two defenses are interposed by the defendant. One is directed to the $35 earned by him during the first eighteen days of January, 1938, and prior to the order of disincorporation, and the other to the $640 claimed to have been earned after disincorporation, that is, from January 18, 1938, to November 28, 1938.

Plaintiff's contention relative to the services rendered after January 18th, is that certain orders of the superior court made following disincorporation continued the Town of South Tucson as a *de facto* municipal corporation and that any services rendered it by him after the action of the board was a legal charge against the assets held by the trustee. In *Darrow* v. *Van Buskirk,* 57 Ariz. 1, 110 Pac. (2d) 216, 217,

an action for recovery of the legal services rendered
the town by Van Buskirk as special counsel after disin-
corporation, the court declined to uphold this view
for the reason that "litigation thereafter testing the
legality of the board's order did not have the effect
of resuscitating or revitalizing the town," (citing au-
thorities), that the town was effectively and legally
disincorporated on January 18, 1938, under the de-
cision in *Town of South Tucson* v. *Board of Super-
visors,* 52 Ariz. 575, 84 Pac. (2d) 581, and that while
the officers might thereafter contest the order of dis-
incorporation in the town's name, they could not in-
cur debts which would bind its assets in the hands of
the statutory trustee. Those funds could be used
only to "pay the debts of the town," and any surplus,
the statute requires, must be returned "into the
county treasury, to be there disposed of for the im-
provement of roads in the vicinity wherein such town
is situated," though the trustee, through permission
of the court, might incur obligations when necessary
to protect or preserve the property owned by the town
at the time of its disincorporation.

This leaves for consideration the question, whether
plaintiff may recover for his services for the last
eighteen days the town had life as a municipal corpora-
tion, that is, January 1 to January 18, 1938. De-
fendant contends that he cannot, for these three rea-
sons: (1) He was a public officer, the town attorney
of the Town of South Tucson, and was neither a resi-
dent nor elector of the town during any of this
period; (2) the town did not legally adopt a budget
for the fiscal year 1937–1938; (3) the salary for the
first fifteen days of January was paid.

▪ Its first contention is based upon section 15,
article VII, of the Constitution of the state, which pro-
vides that:

''Every person elected or appointed to any office of trust or profit under the authority of the state, or any political division or any municipality thereof, shall be a qualified elector of the political division or municipality in which said person shall be elected or appointed.''

and the fact that plaintiff was neither a resident nor a qualified elector of the town during any of the time involved.

In view of this contention, the question whether plaintiff was a public officer or merely an employee of the Town of South Tucson becomes important. The town was organized as a corporation under article 2, Chapter 16, Arizona Code of 1939, and section 16–208, of that article, entitled ''Incorporation Under Common Council Government,'' reads as follows:

''16–208. *Enumeration of officers and appointment*.—In addition to the common council, the officers of every town shall be a town clerk, town marshal and town engineer, who shall be appointed biennially by the common council at its first regular meeting subsequent to the election of such council.''

However, the power to appoint other officers than the three mentioned in this section, was given the common council by section 16–210, Arizona Code of 1939, which is in this language:

''16–210. *Council may prescribe duties, bonds, and compensation of officers*.—The common council may prescribe the duties and compensation of all officers of the town, and provide, by ordinance, the manner of filling vacancies in such offices, and may appoint, from time to time, all officers and agents of the town, whose appointment is not herein provided for, and remove the same. . . . ''

The council, feeling that it needed the services of an attorney to attend its meetings, frame its ordinances, and give it legal advice, retained plaintiff, on June 24, 1937, as Town Attorney of the Town of South Tucson,

at a salary of $50 a month, as the following entry in the minutes of the council meeting of that date discloses:

"A special meeting of the Mayor and Common Council of the Town of South Tucson was called to order by Mayor Kipnis at 8:45 P. M., Thursday, June 24th, 1937. Roll call showed all present except Councilman Glass. It was moved by Councilman Pascale and seconded by Councilman Werner that Mr. Harry O. Juliani be retained as Town Attorney at a salary of $50.00 a month. This was unanimously carried."

Was this an appointment as town attorney, or, as plaintiff contends, merely an employment creating the relation of attorney and client? While the use of the word "retained" might indicate the establishment of a contractual relationship, we think it clear from the complete record that the intention of both the council and the plaintiff was that the latter was appointed to, and that he accepted, the office of town attorney. That they both so regarded his relationship to the town is shown by the minute entry of January 17, 1938, which, so far as pertinent, reads:

" . . . It was moved by Councilman Werner and seconded by Councilman Nora W. Norton and unanimously carried that the movement for disincorporation of the Town of South Tucson be contested and that the *Town Attorney* is instructed to litigate said matter in the courts and that the *Town Attorney* be and he is hereby authorized to engage such legal assistance as he may deem necessary, and that these services as well as extra legal services rendered by the *Town Attorney* in the past and in connection with the litigation aforementioned be charges against the Town of South Tucson." (Italics ours.)

It appears also that in June, 1938, his salary as *town attorney* was raised from fifty to seventy-five dollars per month, effective July 1st thereafter.

The defendant contends further that under *State Consolidated Publishing Co.* v. *Hill*, 39 Ariz. 21, 3 Pac. (2d) 525, 527, the position of town attorney of the Town of South Tucson was an office and that anyone who filled it was an officer. That was an action to recover from Hill extra compensation paid him by the City of Tucson for special legal services rendered it while he was city attorney. There was no law providing for a city attorney of Tucson, or prescribing his duties. The charter of the city vested its government in certain designated officers, a city attorney not being included, "and such subordinate officers as the Mayor and common council may hereafter deem necessary to appoint," and the court held in that case that "the position of city attorney is an office and its occupant an officer." The authority given the city by its charter was the same as that given the common council of the Town of South Tucson under section 16–210, *supra,* and in considering the contention that the salary of the city attorney of Tucson was not fixed by charter or ordinance, and that the duties of the office were not prescribed or defined in either of these ways, the court said:

" . . . Because of the nature of the office and the well-known duties thereof, the omission to state or define them in the charter or ordinances, we think, is unimportant. It is a matter of common knowledge that the city attorney is the head of the legal department of the city. He stands to his city what the Attorney General stands to the state or the county attorney to the county. Generally his duties require him to represent the city in its litigation and to give legal advice to the heads of departments. . . . As such legal adviser, one of his principal duties, it is obvious, was to assist the other officers of the city in preserving and safekeeping its funds, and to institute proceedings for their recovery when unlawfully diverted, paid out, or embezzled."

The plaintiff points out that the court was speaking there of the office of city attorney and contends that the same rule does not apply to the office of town attorney. We are unable to see why a town attorney does not sustain the same relation to a town that a city attorney does to a city or a county attorney to a county. The difference between a town and a city, insofar as it concerns the number of officers each has and the salary paid them, is one of size, need and ability to pay, and the legislature has taken care of this situation by leaving it to the town itself to decide whether it shall have a town attorney at all, and in case it does what his salary shall be.

 Plaintiff contends, however, that even if the position of town attorney of the Town of South Tucson was a public office and he was ineligible to occupy it because of his non-residence, he became under the circumstances a *de facto* officer and as such was entitled to the salary the office carried, and we think this position is sound. Plaintiff was appointed to the office by the town council, the body authorized by law to make the appointment, whereupon he took charge of the office and performed its duties until the order of disincorporation was made. This gave him color of title to the office and undoubtedly made him an officer *de facto,* the rule according to 46 C. J. 1056, § 370, being this: ''Persons having color of title may be regarded as *de facto* officers, even though legally they are not eligible for the position.'' This statement is supported by numerous authorities cited in note 40, among which is *Germany* v. *State,* 109 Tex. Cr. Rep. 180, 3 S. W. (2d) 798, wherein appears this language: ''A person may be a *de facto* officer though ineligible to such office.''

And while it is true, as defendant contends, that the weight of authority is that a *de facto* officer may not

recover the emoluments going with an office, even though he performs its duties, there is a larger number of jurisdictions holding that where he discharges the duties pertaining to the office pursuant to apparent authority and in good faith, he may enforce payment of the compensation to which one filling the office is entitled. See a full annotation on the subject in 93 A. L. R. 258. It is sufficient to say that it has been held for many years in this state that a *de facto* officer may recover the salary attached to office when there is no *de jure* officer claiming it. *Behan* v. *Davis,* 3 Ariz. 399, 31 Pac. 521; *Adams* v. *Directors of Insane Asylum,* 4 Ariz. 327, 40 Pac. 185.

The right of recovery is attacked upon the ground that the town did not adopt a legal budget for the year 1937–1938. This was set up in the amended answer as an affirmative defense but no evidence was introduced in its support, hence it must be treated as waived.

Neither was the third defense, payment of the salary for the first half of January, 1938, established. Payment is also an affirmative defense and the facts show that the check for the first half of January, 1938, was delivered to plaintiff but according to the testimony he did not receive the money because it was likely, as was the custom, delivered to him several days after the 15th and on the 19th, the day following the order of disincorporation, the town's account was impounded and thereafter the bank would not honor checks drawn on it. If plaintiff had cashed it, the defendant could easily have proven payment to that extent by introducing the cancelled check which would have been returned to it after payment but it did not do this.

The plaintiff is entitled to judgment for his salary for the first eighteen days of January, 1938. The judgment is reversed to the extent it denies him this; otherwise it is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.