216 P.2d 702

INTERNATIONAL LIFE INS. CO. v. SORTEBERG et ux.

No. 5111.

Supreme Court of Arizona.
March 28, 1950.

Modified on Rehearing May 8, 1950.
See 217 P.2d 1038.

Evans, Hull, Kitchel & Jenckes, Phoenix, for appellant.

Darrell R. Parker, Phoenix, for appellee.

DE CONCINI, Justice.

Plaintiffs, A. H. Sorteberg and his wife, brought an action in the Superior Court of Maricopa County against the defendant, International Life Insurance Company, a corporation, hereinafter referred to as the company, for commissions earned while employed thereby. The action was predicated on a letter of employment by Mr. Ingalls, President of the company, hiring Mr. Sorteberg, verbal agreements between Ingalls and plaintiff, and plaintiff's Exhibit "A" set out below, being an inter-office written communication by Ingalls to the accounting department:

"International Life Insurance Company
Phoenix, Arizona
"Inter-Office Correspondence
"Date February 19, 1946
"From Office of the President
"Subject ——————
"To the Accounting and Cashier Departments

"Since our billing machine is not equipped to handle any additional commission spreads, please set up a procedure whereby Mr. Sorteberg will receive first year overwriting commissions of 10% of the gross premium on all legal reserve business written by Industrial agents.

"The foregoing is to be retroactive to May 1, 1945.

"Yours respectfully,

"A. G. Ingalls
A. G. Ingalls, President

"To the Accounting Department

"There are no commission credits allowed for the first month's premium on any Ordinary business that is written on a monthly basis, until the 13th month has been paid, At that time, commission credits are allowed for one month's premium in the first year

and one month's premium for the renewal year.

"Yours respectfully,
"EN
"Address Reply to <u>Earl W. Neidlinger,</u>
Cashier"

The action was tried before the court sitting without a jury. Plaintiff recovered a judgment of $7,127.12. The company appeals from the judgment and from the court's order denying it a new trial.

The facts are briefly as follows. Plaintiff went to work for the company February 15, 1945, at a salary of $75.00 per week plus a commission of seven times the weekly premium increase. This arrangement continued until May 1st when it was changed because plaintiff's commissions were considered too high. On May 1, 1945, his salary was increased to $600.00 per month by agreement between plaintiff and Mr. Ingalls, president of the company, with a different commission to be worked out later, which was subsequently termed an "override" or "overwrite". Approximately two months thereafter, plaintiff's salary was cut to $500.00 per month because Mr. Ingalls felt that it was too high in view of the "override" that plaintiff was to receive. Plaintiff accepted the salary reduction. On April 1, 1946, plaintiff's salary was again increased to $600.00 per month and remained so until July 1, 1946. There were no vouchers for the months of July and August but defendant's Exhibit No. 2, shows that plaintiff took another salary cut

to less than $500.00 per month. During the months of September and October plaintiff again collected $500.00 per month.

During all that period the parties were still talking about an "override" for plaintiff. On February 19, 1946, the company through Mr. Ingalls prepared the inter-office communication, plaintiff's Exhibit "A", supra, delivered it to the accounting department and some weeks later a copy was given to plaintiff, which he accepted and acted upon, without comment. It is on this evidence that plaintiff strongly relies, in furtherance of his claim.

The company's main defense is that the words "legal reserve" do not mean legal reserve insurance but rather "ordinary business" sold by industrial agents. "Legal reserve" insurance policies have a "reserve" reflected in cash and loan values and paid up insurance options. Plaintiff contends that he is entitled to commissions on "legal reserve" business sold by industrial agents. Industrial agents were salesmen under plaintiff's supervision who sold insurance to persons on which premiums were collected in weekly and monthly installments.

 The company makes three broad assignments of error, supported by five propositions of law, four of which are as follows:

"I—If the facts found by the trial court and upon which the judgment is based are not substantiated by the evidence, the Supreme Court should reverse the judgment.

"II—If, in reference to the subject matter of a contract, particular words and expressions have, by usage, acquired a meaning different from their plain, ordinary and popular meaning, the parties using those words must be taken to have used them in their peculiar sense.

"III—The construction placed upon a contract by the parties thereto will be followed by the courts when there is doubt as to the meaning or proper construction thereof.

"IV—When a party testifies to facts which, if true, would defeat his right to recover, and such statements are not subsequently modified or explained, he is barred by his own testimony."

The first three propositions of law have no application to the facts in this case, because, (1) there is substantial evidence in the record to sustain the judgment; (2) the court was justified in not finding that the words "legal reserve" in the inter-office communication acquired a different meaning than the ordinary and popular meaning of those words, and (3) the court did not err in placing the construction it did upon the contract in line with plaintiff's theory of the case because there was substantial evidence to support it.

■ The company's fourth proposition of law is not so easy to dispose of because the plaintiff made conflicting statements on cross-examination to the effect that his commissions were to be figured on policies that stayed on the books one year and conversely that his commissions were to be figured on policies that lapsed before the year was out. The audit, plaintiff's Exhibit "E", of the company's business for the period in question doesn't reflect whether or not the policies stayed on the books for the year. The inter-office communication, plaintiff's Exhibit "A" reflects that plaintiff was to receive " * * * first year overwriting commission of 10% * * *," and it was confirmed by Mr. Ingall's testimony. There being ample evidence for the court to conclude that plaintiff's commissions were to be figured on all premiums collected whether they stayed on the books a full year or lapsed before the end of the year from the date of the first premium, we will not disturb the judgment.

■ The company's fifth proposition of law is: "An agreement to pay the employee of an Arizona insurance company compensation in excess of $5000 in any year is invalid unless first authorized by a vote of the Board of Directors of the company."

Section 61-321, A.C.A.1939, provides as follows: "Limit of salaries—Pensions.— No domestic insurance company shall pay any salary, compensation or emolument to any officer, trustee or director thereof, nor any salary, compensation or emolument amounting in any year to more than five thousand dollars ($5,000) to any person, unless such payment be first authorized by

a vote of the board of directors of such company. No such company shall make any agreement with any of its officers, trustees or employees whereby it agrees that for any services rendered or to be rendered he shall receive any salary, compensation or emolument that will extend beyond a period of three (3) years from the date of such agreement unless specially authorized by the commission, nor shall such company pay any pension whatsoever."

The strict meaning of the word "compensation" has by judicial construction been held to mean, "commissions earned by insurance salesmen and tax collectors." See Vol. 7, Words and Phrases, Perm. Ed., 1950 pocket part; Clements v. Peerless Woolen Mills, 197 Ga. 296, 29 S.E.2d 175; American National Ins. Co. v. Keitel, 353 Mo. 1107, 186 S.W.2d 447.

The inter-office communication, plaintiff's Exhibit "A", stated that the commission was to be retroactive to May 1, 1945. From May 1, 1945, to October 1, 1946, plaintiff's salary varied from $500 to $600 per month. The record reflects that he received $6,100.00, in salary and $122.91 in "overwriting commissions" from May 1, 1945, to May 1, 1946, or a total of $6,222.91 for that 12 month period. From May 1, 1946 to October 1, 1946, he received $2,795.20 in salary and $190.01 in "overwriting commissions" or a total of $2,985.21 for a period of five months. If section 61-321, supra, applies to plaintiff,

clearly he cannot recover more than $5,-000 for his first twelve (12) months' work. However, he may be entitled to recover something for the year starting May 1, 1946, because commissions earned after May 1, 1946, together with his salary may not exceed $5,000 for the year ending May 1, 1947.

The question remaining is twofold: Is the plaintiff such a "person" who is precluded from collecting more than $5,000 per year? Was the payment of any amount in excess of $5,000 per year authorized by a vote of the board of directors?

■■ The legislature has the power to pass such a statute because of the fact that an insurance company's business is clothed with a public interest. State ex rel. National Mutual Ins. Co. v. Conn., 115 Ohio St. 607, 155 N.E. 138, 50 A.L.R. 481. The plaintiff is such a "person" precluded by the statute from collecting more than $5,000 per year. He was "Superintendent of Industrial Agents" or "Manager of the Industrial Insurance Sales Department" and was collecting a salary in excess of $5,000 per year for the first year plus "overriding" commissions. The question of whether or not this limitation applies to salesmen who are on a strictly commission basis and are not in an official capacity with the company is not before us and we decline to pass on same.

■ Plaintiff raises the objection in his brief that section 61-321, supra, was not raised in the trial court by way of de-

fense in the company's answer, nor was it defended on that theory and cannot be raised on appeal for the first time. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (citing many Arizona cases). A careful reading of those authorities will disclose a different situation than here. The rule is for the benefit of the party against whom the defense is first raised on appeal. The theory being that he doesn't have the opportunity to defend against it as he would have had it been raised in the trial court. This rule is procedural and not jurisdictional. Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P.2d 581.

The exception to the before-mentioned general rule arises where the question becomes one of a general public nature affecting the public interest. Town of South Tucson v. Board of Supervisors, supra.

We held in Regan v. First National Bank, 55 Ariz. 320, 101 P.2d 214, 218:

"In his reply brief plaintiff urges that it does not appear that the plea of res adjudicata was ever presented in the trial court or was an issue therein, and that under the rule laid down by this court cases must be tried in the appellate court on the same issue upon which they were tried in the lower court. It is true we so held in Tevis v. Ryan, 13 Ariz. 120, 108 P. 461, and many later cases, but in the case of Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, we declined to follow Tevis v. Ryan, supra, to its full extent, and held that when the record in a case on appeal shows affirmatively that certain facts exist sufficient to determine an issue which though not specifically presented and tried out in the lower court is necessarily decisive of the action, we will consider and determine the appeal upon that issue, notwithstanding it was never formally raised or litigated in the lower court.

"Assuming, without determining, that the question of res adjudicata was never presented to nor considered by the trial court, it is evident from the abstract of record in the present case that if it had been, the court must have sustained it and rendered judgment in favor of defendant. Such being the case, it would be useless to send the case back, even if procedural error is shown, when the ultimate result could only be the same."

■ Section 61-321, supra, was passed, not for the benefit of the insurance companies, but for the protection of the policy holders, in that it would prohibit the management from disposing of company assets in one form or another in the guise of compensation for services rendered without the approval of the board of directors. It is apparent that had this statute been raised as a defense below, the trial court would have sustained the defense.

During the trial of this case, Mr. Ingalls, president of the company was asked by its attorney the following questions:

"Q. Were you on the Board of Directors of the International? A. Yes, Sir.

"Q. Were you present at all the meetings of the Board of Directors? A. I believe so, Yes.

"Q. Did the Board of Directors at any time vote on giving Mr. Sorterberg a compensation based on 10% of the premium income of the business? A. No, sir."

Counsel for plaintiff objected.

The Court: "The objection will be overruled.

"Q. Will you answer? A. There was nothing ever put in the minutes to such effect. I want to withdraw that answer entirely because there was nothing ever presented to the Board in regard to it."

 While the proper way to prove the contents of the minutes of a board of directors' meeting is by the record of the minute book itself, yet the fact that the records do not contain any reference to a particular subject may be proved by one who has first hand knowledge of the contents of said records. Pacific Greyhound Lines v. Sun Valley Bus Lines, Inc., 70 Ariz. 65, 216 P.2d 404. The above questions and answers are therefore admissible. The trial court properly overruled plaintiff's objections. It is apparent from the record that the board of directors did not approve of plaintiff's salary and commission arrangement.

The judgment is reversed, the case remanded for trial to ascertain how much plaintiff has earned, if any, in the way of commissions from May 1, 1946 to October 1, 1946. Plaintiff will not be permitted to recover in excess of $5,000 in salaries and commissions through that period or any twelve month period. Each party shall bear his own costs on this appeal.

Reversed and remanded for further proceedings as indicated herein.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.