251 P.2d 306

**RUBENS v. COSTELLO et ux.**

No. 5460.

Supreme Court of Arizona.

Dec. 8, 1952.

George F. Macdonald, of Phoenix, for appellant.

George M. Sterling, of Phoenix, for appellees.

UDALL, Chief Justice.

The appellant, Frank S. Rubens, plaintiff below, brought suit against the appellees, Peter Costello and Margaret S. Costello, defendants below, to recover on a check made to appellant by Peter Costello, which check for $500 was allegedly given "in payment of ten participating shares in 98% of all revenue earned from drilling, exploiting or sale of certain oil and gas leases on lands located in Hidalgo County, New Mexico, as shown by that certain 'Beneficial Trust' agreement" Defendants stopped payment on the check and this suit resulted. From an adverse judgment the plaintiff appeals.

The parties will hereafter be referred to as they appeared in the lower court.

The plaintiff held a license from the corporation commission under the then existing law, the material parts of which are quoted below:

"Opinion and Order

"Application having been made by Frank S. Rubens for a Dealers in Securities Permit to sell and deal in oil and gas leases in the amount of Fifty Thousand ($50,000) Dollars.

"It Appearing That, the applicant has complied with the provisions of Chapter 53, Article 10, Arizona Code Annotated, 1939, and the amendments thereto, along with the provisions of the Opinion from the Attorney General promulgated March 25, 1949; and that detailed information in regard to the applicant is on file in the office of the Arizona Corporation Commission for public inspection and information.

"It Is Therefore Ordered, that the application herein be granted and that the said Frank S. Rubens be and he is hereby authorized to sell oil and gas leases in the amount of Fifty Thousand ($50,000) Dollars."

Shortly after the license was granted, at an evening appointment in their home, the plaintiff offered defendants his securities. The security was a "beneficial trust" instrument signed by George H. Ebsen as trustee, purportedly conveying

a fractional interest, expressed in shares, in 98% of the revenue that might accrue from the development of certain oil and gas leases. The leases, issued to plaintiff by the State of New Mexico, at an annual rental of from ten to twenty cents an acre, and assigned by him to Ebsen as trustee, covered 960 acres of state land.

A similar fractional interest, expressed in shares in 50% of the revenue that might accrue from the development of an oil and gas lease on 80 acres of land close to the 960 acres, was purportedly conveyed by an "Agreement", signed Centex Exploration Co. by Frank S. Rubens, which allegedly was given as a gift to the defendants.

The lower court, sitting without a jury, made no findings of fact as no request therefor was made. The plaintiff, through numerous assignments of error, contends that the defendants failed to substantiate the allegations of their answer that the check was given without legal consideration and that the plaintiff made false and fraudulent representations which induced defendants to issue the check; and further that the plaintiff did sustain the burden of proof and by the preponderance of the evidence was entitled to judgment.

The record in this case shows certain facts to exist that are necessarily decisive of the action, which do not fall within the assignments of error nor the theories upon which the case was tried below. The briefs on appeal follow the theory of the trial. As we held in Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, and International Life Insurance Co. v. Sorteberg, 70 Ariz. 92, 216 P.2d 702, 706:

"* * * when the record in a case on appeal shows affirmatively that certain facts exist sufficient to determine an issue which though not specifically presented and tried out in the lower court is necessarily decisive of the action, we will consider and determine the appeal upon that issue, notwithstanding it was never formally raised or litigated in the lower court." International Life Insurance Co. v. Sorteberg, supra.

It is the general rule that an appellate court will not consider a question not first raised in the lower court but this court said in the case of Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P.2d 581, 584, "* * * this is merely a rule of procedure, and not a matter of jurisdiction. * * *"

"One of the exceptions to the rule is questions of a general public nature, affecting the interests of the state at large, and this is particularly true when the question raised for the first time is one of substantive law which is not affected by any dispute as to the facts of the case, for under such circumstances the parties may present the issue as thoroughly in the appellate court as it could have been presented

below, without injury to either one."
Town of South Tucson v. Board of
Supervisors, supra.

In determining this matter we recognize
the question involved as one of a public
nature, affecting the interests of the state
at large. Substantive law is involved which
is not affected by any of the facts in dispute.

Another exception to the rule is that:

"* * * a legal principle, although
not suggested by either party at the
trial (and we include on appeal) should
be adopted in order to finally dispose
of a cause on appeal if this impels the
speedy enforcement of a right, or
redress of a wrong, and, as a correct
exposition of the law, is appropriate
to the facts involved."

See 4 C.J.S., Appeal and Error, § 242;
Patty v. Salem Flouring Mills Co., 53 Or.
350, 96 P. 1106, 98 P. 521, 100 P. 298.

If for any valid reason the security is
void and its sale prohibited, it would con-
stitute an illegal consideration for the
check under the provisions of the negoti-
able instrument law, section 52–141, A.C.A.
1939, and plaintiff's title to the check would
fail. Therefore, following the above cases
and the rules therein, we look at the char-
acter of the trust agreement and the rights
thereunder, if there be any, without regard
to the assignments of error.

For a ready understanding of the discus-
sion following, this instrument is set out
below:

"Beneficial Trust

"This Beneficial Trust Agreement,
made and entered into this 27th day of
July, 1949, by and between George H.
Ebsen of San Simon, Arizona, as Trus-
tee, party of the first part, and Peter
Costello and Margaret S. Costello,
Joint Tenants with Right of Survivor-
ship, Party of the second part:

"Whereas, the party of the first part
will hold title to State of New Mexico
Oil and Gas Leases, for in behalf of
the parties in interest as shown herein
being the parties of the second part,
covering the following described prop-
erty located in Hidalgo County, New
Mexico:

* * * * * *

"For and in consideration of the
sum of Five Hundred no/100 Dollars
($500.00), and other valuable consider-
ations, the receipt of which is hereby
acknowledged, the party of the second
part becomes the owner of ten (10)
participating share or shares in and to
the net ninety-eight (98) percent of all
the revenue earned from the drilling,
exploiting or sale of the herein men-
tioned oil and gas leases.

"A two percent (2%) over riding
royalty in the herein mentioned oil and
gas leases is retained by and become
the property of Frank S. Rubens.

"Each participating share is based
upon the ratio of One/nine hundredth

in and to the net ninety-eight percent as shown above.

"Nothing contained herein or in the-participating share or shares, shall be construed as, or become binding upon the parties herein as a partnership nor shall the trustee be held liable for any acts beyond his control, nor shall any of the parties to this agreement become liable or responsible for any debts, obligations, etc., incurred without the written consent of all the parties to this agreement.

"However, each party in interest in the herein Beneficial Trust shall have submitted to them by the trustee in writing at the last known address whatever offer or proposition the trustee will receive. The parties in interest shall have a reasonable time to either reject or accept said offer or proposition, and said rejection or acceptance shall be submitted in writing to the trustee. A majority of the parties in interest shall be the controlling decision and shall become binding upon all of the parties in the Beneficial Trust.

"Upon the death or inability of the trustee to perform in this Beneficial Trust, a successor can and shall be appointed by the majority in interest herein. By majority is meant the majority of the participating share owners in interest of the whole. The

participating share or shares are non-assessable.

> /s/ George H. Ebsen
>
> George H. Ebsen, Trustee
> Party of the First Part

/s/

Peter Costello
Margaret S. Costello
5620 N. 7th St., Phoenix, Arizona
Party of the Second Part".

It is a fair inference from the evidence as a whole that Mr. Ebsen, party of the first part in the "Beneficial Trust", was trustee of the naked title only. Apparently he signed these mimeographed instruments in blank for the plaintiff's use in making such sales. Also it is clear that plaintiff was to receive all of the purchase price from the sale of the securities, and nowhere in the evidence is there any obligation shown on the part of the trustee or plaintiff to drill or explore the leased premises.

A reading of the instrument reveals not a simple oil or gas lease or an assignment of such a lease, nor does it reveal only an interest in the revenue that might arise therefrom, such being held by the purchaser as beneficiaries of a trust, but rather the instrument reveals a plan or method of engaging in business. Such a plan is variously called a business or Massachusetts Trust. That the business trust or organization is inchoate as defined therein does not change the nature of it to that of a true trust but rather suggests that it is the re-

sult of artifice or subterfuge. It is evident to the trained mind that the shareholders are to engage in the business of developing the oil and gas leases. All actions of the business trust or association of shareholders are to be controlled by a majority of the parties in interest. It is stated that the shareholders so acting together are not partners. Liability is attempted to be limited. Provision is also made for perpetual succession. These are among the readily recognized powers of corporations. Therefore it would appear that the shares are as much "shares in the business" as interests in oil and gas leases.

What is the right of this business to sell its securities under the license (supra) issued by the corporation commission and the constitution and applicable laws of the state?

The license recites that " * * * the applicant has complied with the provisions of Chapter 53, Art. 10, Arizona Code Annotated, 1939 * * *", and is entitled: "In the Matter of the Application of Frank S. Rubens for a *Dealer in Securities* Permit * * *." (Emphasis supplied). Article 10 of Chapter 53 is entitled "Investment Companies", and Article 11—"Dealers in Securities". These Blue Sky laws have since been repealed by the Securities Act of 1951, Chapter 18, Laws of 1951, except as provided in section 25 thereof. In the case of Commercial Life Ins. Co. v. Wright, 64 Ariz. 129, 166 P.2d 943, 948, wherein the pertinent sections are

fully set out, we had occasion to construe the meaning of these articles and to point out the distinction between an "investment company" and a "dealer". An "investment company" was held to be " * * * one that sells its own stock, and does not engage in the business of stock selling as a dealer does * * *." Quoting from the case of National Bank of the Republic v. Price, 65 Utah 57, 234 P. 231, 236. A dealer in securities was likened to a "merchant in securities", the court citing Leach Corporation v. Blacklidge, D.C.Ill., 23 F.Supp. 622, 626.

It would seem then, by the language used, that the applicant was granted a license under both Articles 10 and 11 of Chapter 53 *to sell and deal in oil and gas leases,* i. e., the "issue" in the amount of $50,000 was approved, and that Frank S. Rubens was a proper person to handle their sale. (Emphasis supplied.) The requirements of our Blue Sky laws having been met, the question of the right of the business trust to sell its securities or do business without complying with the provisions of our general corporation laws, is squarely raised.

 The business trust in this case claims, ipse dixit, to be possessed of powers granted to corporations, not naturally belonging to individuals or copartnerships. Such a business trust is a corporation in Arizona by virtue of the constitutional and code definitions of corporations.

"The term 'corporation,' as used in this article, shall be construed to in-

clude all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or copartnerships, and all corporations shall have the right to sue and shall be subject to be sued, in all courts, in like cases as natural persons." Const., Art. 14, § 1.

Section 53–202, A.C.A.1939, uses the same definition but separates the language of Const., Art. 14, § 1 (supra), so that the right to sue and be subject to suit, in like cases as natural persons, is found under "Grant of powers" as follows:

"Among the powers of such bodies corporate shall be the following:

"To have perpetual succession;

"To sue and be sued by the corporate name; * * *." Section 53–204, A. C.A.1939.

That such is the consequence of our definitions was held in the case of Reilly v. Clyne, 27 Ariz. 432, 234 P. 35, 40 A.L.R. 1005. The court quoted from cases of other states whose similar code and constitutional provisions were construed to prohibit business or Massachusetts Trusts having "powers" from engaging in business without first incorporating. This definition, which is found in the section of the code on corporations in general, implementing the constitutional provision, applies to all associations and joint stock companies not existing by virtue of a sovereign grant, i. e., a particular statute, as example: Section 61–339, A.C.A.1939. See State ex rel. Great American Home Savings Institution v. Lee, 288 Mo. 679, 233 S.W. 20; Newton County Farmers' & Fruit-Growers' Exchange v. Kansas City Southern Ry. Co., 326 Mo. 617, 31 S.W.2d 803. The purpose of the legislation is well illustrated in the case of State ex rel. Range v. Hinkle, 126 Wash. 581, 219 P. 41, quoted as follows in the Reilly case, supra:

"Article 1, section 29, of our Constitution (our section 32, art. 2) provides that 'the provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise.' Under the mandatory provisions of the Constitution, the so-called common-law trust is prohibited from doing business within this state. Our corporation laws are sufficiently broad to include every desired form of organization, and there is no reason for resorting to this form of organization, except for the purpose of avoiding the payment of the fees, assessments, and taxes imposed upon corporations in general, and to avoid their statutory regulations. It would seem that the framers of our Constitution anticipated such tendency, and wisely provided that the term 'corporations' should include 'all associations and joint-stock companies having any powers or privileges of corporations not possessed by individuals or partnerships,' and thereby prevented the formation of the self-

organized associations of every kind for the purpose of transacting business without meeting the obligations and complying with the statutory regulations of corporations. The plaintiffs have no legal status in this state, and are without legal standing in this court." [27 Ariz. 432, 234 P. 39.]

The late Justice Ross, in the Reilly case, supra, after quoting from cases in other jurisdictions, stated:

"We are in accord with these courts in holding the Massachusetts trust to be in all essentials a corporation as defined by our laws and, if it is a corporation, before it may sell its stock, bonds, and securities, the law makes it imperative that it adopt, publish, and file with the Corporation Commission articles of incorporation. Paragraphs 2100, 2101, Civil Code 1913." (Now appearing as Sections 53–301, 53–302, A.C.A.1939)

The business trust in this action had not incorporated and was acting under no statute authorizing an unincorporated association to engage in the business of developing oil and gas leases. Not coming within the provisions of a particular statutory authorization, the business trust falls under the code sections governing corporations in general. The provisions of the statute being mandatory, Const. Art. 2, § 32, the sale of the security was in violation of positive law. A check given for such security is given for an illegal con-

sideration within the meaning of Section 52–141, A.C.A.1939, as between the parties to the instrument. 10 C.J.S., Bills and Notes, § 154. The trial court therefore correctly gave judgement for defendants.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.