599 P.2d 209

William D. BARNHIZER, surviving father of Steven A. Barnhizer, deceased, for and on behalf of himself and Georgia Barnhizer, his wife, as surviving parents of Steven A. Barnhizer, deceased, Appellants,

v.

PARADISE VALLEY UNIFIED SCHOOL DISTRICT # 69 of the County of Maricopa, Appellee.

No. 14167.

Supreme Court of Arizona,
In Banc.

July 23, 1979.

Rehearing Denied Sept. 6, 1979.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl by Brian Kaven, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is a wrongful death action brought by William D. and Georgia B. Barnhizer to recover damages for the death of their son, Steven A. Barnhizer. The Superior Court granted a summary judgment in favor of the Paradise Valley Unified School District # 69, and the plaintiffs appealed. We accepted jurisdiction pursuant to the Rules of Civil Appellate Procedure, rule 19(e). Judgment affirmed.

The facts of this case are not in dispute. On the evening of May 2, 1975, Steven Barnhizer, then thirteen years old, and two companions went to the Desert Shadows School in Scottsdale where a school sponsored dance was in progress. After telling a teacher chaperone that they were not going to the dance, they were told to leave the area. They left, but later returned to the school from a different direction. Steven suggested to his companions that they climb to the roof of the school building. One of his companions, John Hert, then 15 years old, expressed opposition because he had seen other boys being told by teachers and janitors not to climb onto the roof. However, Steven's suggestion prevailed. Steven fell from the roof, incurring injuries which resulted in his death.

The affidavits of John Hert reveal the factual basis for plaintiffs' suit.

"Steven went up first. In order to do this, we had to first climb up one of the steel beams that support the roof over the sidewalk next to the building. * *

We were able to climb up the beam by wedging our feet into the grove [sic] in the beam and pulling up on the beam as we alternated feet. I slid a few times but finally succeeded in climbing the beam to the sidewalk roof.

Once on top of the sidewalk roof, Steven showed us how to walk so as to not make noise or be seen by the school teachers so they would not catch us. * *

It was easy to get onto the coverings by climbing up the I–Beams because the groove in the I–Beams provided a place to put your foot and then when you grabbed ahold of the I–Beam you could kind of walk right up the beam. Practically every day at school while I was in the eighth grade before the accident, which would have been from September of 1974 until the accident on May 2, 1975, students climbed the I–Beams onto the roofs of the school buildings. Teachers and on occasion janitors told the kids to get down from the roofs regularly. I'd say, about twice every week I would see teachers or a janitor telling the kids to get down."

■ While a summary judgment is not generally appropriate in negligence cases, *Boozer v. Arizona Country Club*, 102 Ariz. 544, 434 P.2d 630 (1967), it is proper when the record demonstrates that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law, *Jabczenski v. Southern Pacific Memorial Hospital*, 119 Ariz. 15, 579 P.2d 53 (1978).

■ Ordinarily, the duty of a landowner to a trespasser is not to willfully or wantonly injure him. *Buckeye Irrigation Co. v. Askren*, 45 Ariz. 566, 46 P.2d 1068 (1935). Or, as the Restatement of Torts (Second) § 333 puts it, a possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to put land in a condition reasonably safe for their reception. Where children are concerned, an exception to this rule has developed, commonly known as the doctrine of attractive nuisance. *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 472 P.2d 12 (1970); Prosser on Torts, 4th Ed. at 364; 2 Harper and James § 27.5.

The Restatement of Torts (Second) recognizes that a possessor of land may be liable to a child trespasser if certain conditions concur. Section 339 of the Restatement provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

\* \* \* \* \* \*

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it \* \* \* "

In *McHugh v. Reading Co.*, 346 Pa. 266, 30 A.2d 122 (1943), the Pennsylvania Supreme Court considered the application of § 339 to a case involving a fatal fall. Plaintiffs' decedent, a six-year-old girl, climbed onto a bridge abutment, 24 feet above the street, to play on an ornamental cornice dubbed the "king's throne." Attempting to descend from the "throne" she lost her footing and fell to her death. The Court first set out the purpose of the duty of the landowner to trespassing children:

"The purpose of the *duty* is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger." 346 Pa. at 269, 30 A.2d at 123. (Emphasis added.)

Then it said:

"No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity is almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of the spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness,' but the possessor of land is not to be visited with the responsibility for accidents due to this trait of children of the more venturesome type." 346 Pa. at 269, 30 A.2d at 123.

Other courts have adopted the same or similar reasoning. See, e. g., *Garcia v. Soogian*, 52 Cal.2d 107, 338 P.2d 433 (1959); *Fourseam Coal Corp. v. Greer*, 282 S.W.2d 129 (Ky.1955); *McDermott v. Kaczmarek*, 2 Wash.App. 643, 469 P.2d 191 (1970).

We are persuaded, as was the trial court, that, as a matter of law, plaintiffs failed to meet the condition set forth in part (c) of § 339 of the Restatement, supra, a condition which must exist before a duty arose to protect the decedent against his own folly. Steven was just eight weeks short of his fourteenth birthday and was of the age and intelligence to appreciate the clear danger of falling. The doctrine of attractive nuisance did not, therefore, have application.

Appellants argue that even assuming that Steven was trespassing at the time of his death and that he recognized the danger of falling, because the School District knew that school children could climb to the roof, it had a duty to eliminate or reduce the risk. The problem with this argument is that Steven on this occasion was not an invited school child but a trespasser for whom the School District had no duty except not to willfully or wantonly injure him. The possessor of property is not under a duty to prevent every possibility of harm.

Judgment affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.