645 P.2d 1264

## In the Matter of the ESTATE OF Margaret E. GEIS, Deceased.

**Margaret L. HOPE, Petitioner/Appellant,**

v.

**Vernon B. KASSEBAUM, Personal Representative of the Estate of Margaret E. Geis, Deceased, Respondent/Appellee.**

No. 2 CA–CIV 4247.

Court of Appeals of Arizona, Division 2.

March 31, 1982.

Rehearing Denied May 12, 1982.

Review Denied June 8, 1982.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Clague A. Van Slyke and Andrew M. Federhar, Tucson, for petitioner/appellant.

Lesher, Kimble & Rucker, P. C. by Monte C. Clausen, Tucson, for respondent/appellee.

## OPINION

HOWARD, Chief Judge.

The issue in this case is whether the trial court erred in ruling that jewelry, located in a safety deposit box, passed under the decedent's will to her sister, Elizabeth Swanson.

Decedent, Margaret E. Geis, died on December 10, 1980, at the age of 79 years. She was survived by her sister and brother-in-law, Elizabeth and Fred Swanson, her niece, the Swanson's daughter, Margaret L. Hope, and Mrs. Hope's children, Elizabeth Lorenzo, Paul Debry III and Fred Hope III. All the relatives live in Florida except Elizabeth Lorenzo who lives in New York City.

Decedent's estate, at the time of her death, consisted of her home in Tucson, a cabin on Mt. Lemmon, various and numerous art objects, an extensive collection of jewelry, silverware, stocks and bonds valued at over $3,000,000, $20,000 in checking and savings accounts, a 1962 Continental four-door sedan and two insurance claims against the Royal Globe Insurance Company for monies allegedly due under an insurance policy for items lost when her house was burglarized. The last will and testament of decedent was signed on April 9, 1980. She devised her house and cabin to her sister, Elizabeth Swanson, and specific amounts of money to both Elizabeth and her husband, Fred. She then bequeathed ". . . all my household goods and furnishings, automobiles, personal effects and other similar tangible personal property to my sister, ELIZABETH SWANSON . . . ." Forty percent of the residuary estate was given outright to Paul Debry III and Elizabeth Lorenzo. The remaining sixty percent passed to the trustees of a testamentary trust for the benefit of Margaret L. Hope and Frederic H. Hope III.

Twelve to fifteen pieces of jewelry were found in the home of the deceased at the time of her death. The jewelry that is at issue here, however, was found in a safety deposit box. At trial it was the position of appellant that the jewelry found in the home was a "personal effect" but that the deceased never wore the jewelry in the safety deposit box and therefore it was not a "personal effect". Appellant's counsel told the court:

"And what our question before this court today is what is encompassed with-

in the phrase 'personal effects and other similar tangible personal property'.

It is our contention to this court that that does not include the contents of a safety deposit box established at a bank outside of the decedent's home."

And appellant's counsel further stated:

"Our argument is that if it was in the house, if it was things that she was consistently wearing, then the estates [sic] interpretation of the jewelry going to Mrs. Swanson under the will is consistent. Those are personal mementos that would pass as personal effects. It is important to distinguish between the personal effects that she wore all the time and the contents of the safety deposit box which she *never* wore and thus are not personal effects." (Emphasis added)

After hearing testimony on the issue, the trial court ruled that the jewelry in the safety deposit box passed to Elizabeth Swanson under the will. Appellant contends that this was error. We affirm.

■ Appellant first argues that under the doctrine of ejusdem generis, the phrase "personal effects" as used in the will did not include jewelry. From the transcript which we have quoted, it can be seen that this theory was not the theory upon which appellant tried the case below. We shall, therefore, not consider this argument. *Barrosso v. First National Bank*, 122 Ariz. 469, 595 P.2d 1014 (App.1979).[1]

■ Appellant's second contention is that the questioned phrase does not include jewelry that was in the safety deposit box. If the evidence below was that the deceased never wore this jewelry as appellant tried to show in the trial court, there would be merit in this position. See *In re Estate of Stengel*, supra, fn. 2. However, there was evidence to the contrary. The deceased constantly took the jewelry out of the safety deposit box and wore it. When she went to Florida, innumerable pieces worth thousands of dollars were sent by the bank to her in Florida for her use while she was vacationing there. When the deceased left Florida, the jewelry was shipped back to her deposit box in Tucson. Appellant's argument therefore fails on this score.

Appellant further argues, without citation of any authority, that the mere fact that the jewelry included some very expensive pieces was proof that the deceased did not intend to include it in the phrase "personal effects". We do not agree. The evidence shows that the deceased wore and treated the jewelry as her "personal effects". The mere fact that she kept it in a safety deposit box, instead of in a safe in her home, would not change the nature of this property into something other than "personal effects".

Appellant also argues that since the decedent did not wear the jewelry for a period of time prior to her death, the property was no longer being worn. The trial court did not agree with this argument and neither do we. During the period after 1978, the decedent had become ill which necessarily limited the occasions for displaying and wearing jewelry.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.

---

1. As to the meaning of the questioned phrase "personal effects", see 30 A.L.R.3d § 16 at 797 and the cases of *Matter of Estate of Donovan*, 169 Mont. 278, 546 P.2d 512 (1976); *In re Estate of Stengel*, 557 S.W.2d 255 (Mo.App. 1977).