790 P.2d 290

Charlie BROWN, a minor, By and Through his Guardian Ad Litem, Nancy BROWN; Nancy Brown and Ernie Brown, wife and husband, Plaintiffs–Appellants,

v.

ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 88–541.

Court of Appeals of Arizona, Division 1, Department C.

March 1, 1990.

As Corrected May 3, 1990.

Rake, Copple, Downey & Black, P.C. by Richard A. Black, Patrick Rake, David L. O'Daniel, Phoenix, for plaintiffs-appellants.

Snell & Wilmer by Robert W. Haskin, Jr., Lawrence F. Winthrop, Eileen J. Moore, Phoenix, for defendant-appellee.

GERBER, Judge.

Charlie Brown and his parents appeal from a judgment for Arizona Public Service Company (APS) on the Browns' "attractive nuisance" claim. They allege that Charlie suffered an electric shock and severe injury from an APS high-tension electric pole that was easy to climb. We conclude that in granting APS's motion for summary judgment, the trial court relied on an obsolete formulation of the doctrine of attractive nuisance. The dispositive question on appeal is whether the attractive nuisance doctrine includes a requirement that the injured child be "attracted" by the object that caused his injury.

FACTS

At the time of his injury, Charlie Brown was a 16–year–old high school student. On February 10, 1987, he was visiting at the home of a friend in west Sedona. He had visited there many times before. On this occasion he and his friend were planning a Civil War reenactment.

While outside, Charlie and his friend heard a cat meowing as if in trouble. They spotted the cat at the top of a utility pole in a neighbor's yard. The utility pole was a 35 foot transformer pole owned, operated and maintained by APS with a single phase 7200 volt primary conductor. A secondary conduit was attached to the pole along with cable television facilities and telephone equipment. Also attached to the pole was a vertical pipe held by iron supports approximately six inches out from the wooden pole.

Charlie's friend attempted to climb the pole first but left to change his shoes for

better traction. Before his friend came back, Charlie decided that he could get the cat down. Charlie testified in his deposition:

Q. What was it that attracted you to this particular pole? In other words, why did you climb this pole as opposed to the next pole down or a pole three blocks away?

A. For one thing, the cat was on it, and for another, I never really seen a pole so easy to climb.

Q. If it had not been for the cat, would you have still climbed that pole on the date of the accident?

A. No.

. . . .

Q. The fact that the pole had a metal pipe running along side of it that made it easy to climb had nothing to do with what attracted you to that pole; isn't that true?

A. No, it didn't attract me. It was just the cat.

Q. The metal pole with the pipe simply provided an easy means for you to climb up to the cat; isn't that true?

A. Yes.

In a later affidavit, Charlie stated:

5. I decided I wanted to climb the pole because I thought it would be fun to get up and look around and I have always liked to climb things. I thought I could have fun by climbing the pole and at the same time do a good deed by getting the cat down.

. . . .

8. I would not have attempted to climb the pole if it was difficult to climb because it was not my cat and I did not know whose cat it was. It was so easy to climb the pole that I wanted to climb it before Brett [Charlie's friend] got back and did it himself.

9. It appeared to me that the pipe was set out from the pole to make it easy to climb and there was no sign or fence or anything to warn me that there was any danger to me if I climb the pole. . . .

Charlie climbed the pole. When he got to the top bracket that held the iron pipe to the wooden pole, he stood on it for a time with his back to the pole to admire the scenery. From that position, the cat was still above his head. With his hands and chest against the pole, he started after the cat. At that point he received an electric shock and fell, sustaining injuries.

## PROCEDURE IN THE TRIAL COURT

APS filed a motion for summary judgment arguing that as a matter of law under *Salt River Valley Water Users' Association v. Compton*, 39 Ariz. 491, 8 P.2d 249 (1932), *opinion on rehearing*, 40 Ariz. 282, 11 P.2d 839 (1932), the attractive nuisance doctrine afforded no basis for recovery. APS reasoned:

Plaintiffs' complaint unequivocally establishes that it was the *cat*, rather than the *pole*, that attracted him. Furthermore, Plaintiff proved by his own positive testimony that it was *not* the pole, but the cat on top of the pole, which was the *temptation* to which he yielded, and that the pole was merely a convenient means of access to the real *temptation*.

(Emphasis in original.)

In their response to the motion for summary judgment, the Browns accepted *Compton* as the governing authority and argued that the motion should be denied because of a material dispute over whether rescuing the cat was Charlie's only purpose in climbing the pole. The trial court granted APS's motion for summary judgment without specifying reasons.

## THE PARTIES' CONTENTIONS ON APPEAL

The Browns contend the judgment must be reversed because *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958), which neither side argued to the trial court, disapproved *Compton* to the extent *Compton* required attraction onto the defendant's property by the very instrumentality that constituted the attractive nuisance. The Browns also argue that, even assuming the attractive nuisance doctrine requires that Charlie be attracted by the "nuisance" itself, i.e. the pole, a triable issue of fact existed concerning whether the cat or the

**6**

pole, or both, tempted him to climb. The Browns argue that the judgment should in any event be reversed because the Arizona Supreme Court adopted *Restatement (Second) of Torts* § 337 (1965) in *Webster v. Culbertson,* 158 Ariz. 159, 761 P.2d 1063 (1988) after the trial court's judgment. The Browns argue they should be given the opportunity to proceed against APS on the new theory of liability that *Webster* established.

APS contends that the Browns are precluded from arguing for the first time on appeal that Charlie need not have been attracted by the nuisance. APS acknowledges that *MacNeil* held that the attractive nuisance doctrine did not require proof that the dangerous instrumentality attracted the child onto the property. APS contends, however, that even under *MacNeil* the artificial condition must still have been what ultimately lured the child to the danger that caused his injury. APS additionally urges that the record establishes no triable factual issue concerning what induced Charlie to climb the pole. Finally, it argues that *Webster v. Culbertson* does not justify reversing the judgment to allow the Browns to raise a theory of liability they failed to assert before.

### EFFECT OF BOTH SIDES' NEGLECT TO BRING MacNEIL V. PERKINS TO THE TRIAL COURT'S ATTENTION

■ Generally, a party may not advance a new theory on appeal to secure a reversal of the trial court's judgment. *See Jennings v. Roberts Scott & Co., Inc.* 113 Ariz. 57, 546 P.2d 343 (1976); *Contempo Construction Co. v. Mountain States Telephone & Telegraph Co.,* 153 Ariz. 279, 736 P.2d 13 (App.1987); *Dillon–Malik, Inc. v. Wactor,* 151 Ariz. 452, 728 P.2d 671 (App.1986). However, this rule is procedural, not jurisdictional, and exists only for orderly court administration. *Hawkins v. Allstate Insurance Co.,* 152 Ariz. 490, 733 P.2d 1073 (1987) *cert. denied* 484 U.S. 874, 108 S.Ct 212, 98 L.Ed.2d 177 (1987). As this court stated in *Stokes v. Stokes,* 143 Ariz. 590, 694 P.2d 1204 (App.1984):

> Normally, an appealing party may not urge as grounds for reversal a theory which he failed to present below. *In re Geis' Estate,* 132 Ariz. 350, 645 P.2d 1264 (App.1982).

> However, this rule is procedural and not jurisdictional. *South Tucson v. Board of Supervisors,* 52 Ariz. 575, 84 P.2d 581 (1938). The rule is for the benefit of the party against whom the defense is newly asserted on appeal and is intended to prevent surprise. *Int'l Life Ins. Co. v. Sorteberg,* 70 Ariz. 92, 216 P.2d 702 (1950). "The theory [is] that he doesn't have the same opportunity to defend against it as he would have had it been raised in the trial court." 70 Ariz. at 98, 216 P.2d at 705. Where, however, the record contains facts determinative of an issue which will resolve the action, that issue may be reviewed on appeal, even if it was never formally raised in the trial court. *Rubens v. Costello,* 75 Ariz. 5, 251 P.2d 306 (1952). Other exceptions to the general rule include situations where the matter involved is one which affects the general public interest, or where a legal principle, although not suggested by either party, should be adopted on appeal to expedite the enforcement of a right, or redress a wrong. *Id.* The exceptions to the general rule operate only where the facts of a particular case so warrant and the question is one of substantive law presenting no dispute as to the facts. *Id.*

*Id.* 143 Ariz. at 592, 694 P.2d at 1206. *See also Washington National Insurance Co. v. Employment Security Commission,* 61 Ariz. 112, 144 P.2d 688 (1944); *Mead v. Nacey,* 23 Ariz.App. 121, 531 P.2d 166 (1975).

Under the unique circumstances of this case, the issue the Browns now raise concerning the doctrine of attractive nuisance should be considered on appeal because to hold otherwise would defeat rather than promote the "attainment of justice." *Hawkins,* 152 Ariz. at 503, 733 P.2d at 1083. Not one but *both* parties failed to argue the current law to the trial court. Furthermore, it was APS, not the Browns, that first defined the law claimed applicable to this case by exclusive reference to *Comp-*

*ton.* APS evidently did so without bringing to the trial court's attention the fact that *Compton* had been overruled on at least one point.

We therefore decline to follow the policy that limits raising new issues on appeal. We cannot affirm a clearly incorrect ruling by applying an outmoded formulation of attractive nuisance contrary to case law which both sides failed to argue in the trial court. *Hawkins,* 152 Ariz. at 503, 733 P.2d at 1086.

"ATTRACTION" TO THE "NUISANCE"

[2] Ordinarily, a possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to make the land reasonably safe. *Barnhizer v. Paradise Valley Unified School District,* 123 Ariz. 253, 599 P.2d 209 (1979), following *Restatement (Second) of Torts* § 333 (1965). Where the trespasser is a child, however, the doctrine of attractive nuisance imposes on the possessor a duty to exercise reasonable care where certain special conditions occur. *See Barnhizer,* 123 Ariz. at 254–55, 599 P.2d at 210–11.

Our supreme court's pre-*Restatement* decision in *Compton* was an early application of the attractive nuisance doctrine. Its facts are similar to those here. The plaintiff, a 13–year–old boy, climbed a high-tension electric pole that was constructed like a ladder to see a bird's nest at the top. He suffered an electric shock and was injured when he fell to the ground.

In the trial court, Compton recovered judgment against the Salt River Valley Water Users' Association, the owner of the pole. On appeal, the supreme court reversed the judgment and remanded for entry of judgment for the defendant. The court recognized that under the existing knowledge in the electrical industry, a high-tension electric pole was effectively an "unguarded ladder" which could subject its owner to liability under attractive nuisance if easily and usually accessible to children. But the court continued:

> ... there is practical unanimity ... that no matter how attractive an object may be, unless it was the attraction of *that particular object* which lured the child to its injury, the doctrine can have no application, and even though an attractive nuisance may exist on the premises of the landowner, if the real lure was not such nuisance, but something else, there can be no recovery in case of injury. [Citations omitted.]

In this case the complaint alleges positively, fully and without equivocation that plaintiff went to the place where he was injured, not by reason of the attractiveness of the pole, but because of the bird's nest which was built on top of the pole. The evidence of plaintiff himself was conclusive that his sole and only purpose was to examine said bird's nest and perhaps rob it.

39 Ariz. at 505–06, 8 P.2d at 254; (emphasis in original.)

On motion for rehearing, the court reaffirmed its decision by a vote of two to one. The majority stated:

> [T]he essential elements [of the doctrine of attractive nuisance] are unmistakable if it is to be applied. (a) The defendant must have tempted the child to come on his property; and (b) he must have *yielded* to that temptation.
>
> . . . .
>
> [U]nless the child goes on the property by reason of the temptation of the very instrumentality which is held to be the attractive nuisance, he cannot recover.

40 Ariz. at 288, 289, 11 P.2d at 841, 842; (emphasis in original).[1]

---

1. Other courts have followed *Compton* when presented with similar facts at various times. *See Burns v. City of Chicago,* 338 Ill. 89, 169 N.E. 811 (1929) (eight-year-old boy who climbed light pole to touch light to win bet with other children); *Dennis' Administrator v. Kentucky and West Virginia Power Co.,* 258 Ky. 106, 79 S.W.2d 377 (1935) (fifteen-year-old boy who climbed high-tension electric tower to see football game); *State ex rel. Kansas City Light & Power Co. v. Trimble,* 315 Mo. 32, 285 S.W. 455 (1926) (fourteen-year-old boy who climbed electric pole to show off for two Girl Scouts); *Gouger v. Tennessee Valley Authority,* 188 Tenn. 96, 216 S.W.2d 739 (1949) (fourteen year old boy who climbed high-tension electric tower in his father's field to find out why it was making a

Two years after *Compton,* The American Law Institute began a trend that led to the scrapping of the "attraction" requirement in Arizona and most other jurisdictions.

In 1934 the *Restatement of Torts,* in what has proved to be one of its most effective single sections, threw its support behind the special duty rules for child trespassers. It discarded the idea of allurement to trespass, and defined the "attractive nuisance" rule in general negligence terms. Section 339, as modified in the Second Restatement, has been cited so frequently, and has received such general acceptance on the part of the courts, that it has become the new point of departure.

W. Prosser and W. Keaton, *The Law of Torts* § 59, at 42 (1984). Section 339 of the *Restatement of Torts* recasts the "attractive nuisance" doctrine as follows:

A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass and

(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children and

(c) the children because of their youth *do not discover the condition or realize the risk involved* in intermeddling in it or *in coming within the area made dangerous by it,* and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

(Emphasis added.) The emphasized portions of § 339 make it clear that "attraction" or "allurement" to the dangerous condition that causes the injury is not a prerequisite to liability.

different noise than he had heard it make be-

A year after its publication, Arizona adopted § 339 as a "rule of general application." *Buckeye Irrigation Co. v. Askren,* 45 Ariz. 566, 575, 46 P.2d 1068, 1071 (1935). However, the viability of the "attraction" requirement was not at issue in *Buckeye Irrigation.* Despite *Buckeye Irrigation*'s adoption of § 339, our Supreme Court later followed the holding of *Compton* in two later decisions without considering whether it was consistent with § 339. *Lee v. Salt River Valley Water Users' Association,* 73 Ariz. 122, 238 P.2d 945 (1951); *Holbrook Light & Power Co. v. Gordon,* 61 Ariz. 256, 148 P.2d 360 (1944).

The "attraction" rule suffered a mortal wound in *MacNeil v. Perkins,* 84 Ariz. 74, 324 P.2d 211 (1958) which both parties failed to argue to the trial court. In that case the defendants owned a mining camp on which stood a small concrete powder magazine with a two foot square steel door. The magazine contained dynamite caps, blasting caps and electrical detonators. The door, never padlocked, was at times left open. Two boys, aged 13 and 11, who had previously spent time on the property without objection from defendants, went to the mining camp. After spending some time hunting, they took a box of dynamite caps from the powder magazine and with a third boy heated the caps over a fire. The caps exploded and grievously injured all three.

In *MacNeil,* the supreme court rejected the argument that *Compton* precluded application of the attractive nuisance doctrine:

Defendants emphasize that the third rule mentioned in the Compton case [40 Ariz. 282, 11 P.2d 839] on rehearing excludes this case from the attractive nuisance doctrine:

. . . .

In reviewing the cases in jurisdictions which have adopted the attractive nuisance doctrine, it is apparent that the courts have not construed the above rule as have defendants. An examination of the cases cited in the Compton case un-

fore.)

der the third rule mentioned do not sustain defendants' contention.

. . . .

None of the above cases hold [sic] that the instrumentality called for the application of the attractive nuisance doctrine and consequently are [sic] not legitimate authority to support this rule.

In *Downs v. Sulfur Springs Etc.*, 80 Ariz. 266 [sic, 286], 297 P.2d 339 [1956], the decedent came on the premises to play with the permission and knowledge of his father, who was an employee of the defendant, and was thereafter attracted to the automatic circuit breaker to see what was in the glass jars. So far as the Compton case, supra, conflicts with the Downs case in this respect, the former is disapproved.

The case of *Marino v. Valenti,* 118 Cal.App.2d 830, 259 P.2d 84, 95 [1953] clearly states the rule:

> "Defendants also suggest that even if the shack was an 'attractive nuisance' there can be no recovery because it was a dynamite cap within the shack, not the shack, which caused the injury. *That is not the law, whether we look upon the caps as an attraction within an attraction or as a concealed highly dangerous condition, a 'trap,' on the premises.* We consider that this is more appropriately viewed as a prima facie case of liability measured

by the tests indicated in § 339 of the Restatement of the Law of Torts, which our review of the case law convinces us, expresses the California rule concerning injuries to trespassing children." (Emphasis supplied.)

84 Ariz. at 79–81, 324 P.2d at 214–15. *Compton* thus is overruled in this respect by *MacNeil.*

APS now argues that after *MacNeil,* for liability to attach, "the defendant must still create a dangerous artificial condition which attracts the child once the child is on the property." *MacNeil, Marino v. Valenti* and § 339 of the *Restatement of Torts* require the contrary.[2] The pertinent subsections of *Restatement* § 339, which *MacNeil* quoted with approval, *id.* 84 Ariz. at 81, 324 P.2d at 215, require only that "the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass," and that "the children because of their youth do not discover the condition or realize the risk involved ... in coming within the area made dangerous by it...." *Restatement* § 339(a), (c). From the record in this case, it is impossible to say whether a jury could find either of these conditions.

APS's interpretation of *MacNeil* is inconsistent with the Arizona courts' post-*MacNeil* adoption of § 339 of the *Restatement (Second) of Torts.*[3] *See Spur Feeding Co.*

---

**2.** We recognize that the *MacNeil* court also stated in dictum:

> Dynamite caps are one of the items recognized as attractive to children under the attractive nuisance doctrine. No other conclusion can be reached from the evidence than the dynamite caps afforded the temptation, and yielding to that temptation they took the caps. Therefore, we have the element of temptation, the yielding to the temptation, and in addition, there existed the trespass.

84 Ariz. at 82, 324 P.2d at 216. Although this paragraph could be viewed as supporting APS's interpretation of *MacNeil,* from its context we interpret it as far more likely an expression of the court's opinion that the evidence met the requirement of *Restatement* § 339(a) that "the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass...." *See* 84 Ariz. at 82–83, 324 P.2d at 216–17.

**3.** *Restatement (Second) of Torts* § 339 states:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
>
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

*v. Fernandez,* 106 Ariz. 143, 472 P.2d 12 (1970); *Clarke v. Edging,* 20 Ariz.App. 267, 512 P.2d 30 (1973). The comments to § 339 of the *Restatement* reject the view that the injured child must actually have been attracted by the dangerous artificial condition that injured him. Comment f states:

The rule stated in this Section is not limited to cases in which the trespassing child has intermeddled with anything on the land. It applies although the child has not in any way interfered with anything on the land, and never discovers the particular condition which injures him.

Comment k states:

A condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them ... but this is not the only childish characteristic which may make a condition, which involves no serious risk to an adult, highly dangerous to children. Children are notoriously inattentive to their surroundings, and this characteristic may make it unlikely that children will discover a condition which would be obvious to an adult (see Illustration 3). The lack of experience and judgment normal to young children may prevent them from realizing that a condition observed by them is dangerous or, although they realize that it is dangerous, may prevent them from appreciating the full extent of the risk.

Illustration 3 states:

The A Manufacturing Company maintains a high-tension electric wire from its power house to its factory. This wire is permitted to become uninsulated and to sag from the pole so that it comes into close proximity to magnolia trees, which are close to the highway at a point where there is no fence. B, a young child, climbs the tree to pick the blossoms and comes into contact with the wire which, in his eagerness to get the flowers, he does not observe. The A Company is liable to B.

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to

Though it predates *MacNeil* and § 339, *Johns v. Fort Worth Power & Light Co.,* 30 S.W.2d 549 (Tex.Civ.App.1930), is consistent with this reasoning:

We do not think plaintiffs' right to recover is precluded by the fact that the evidence shows that the special purpose which induced the boy to climb the tower was to extricate his kite.

. . . .

The tower was not only peculiarly attractive to boys of immature age because of its construction, but we think the fact steps were placed thereon, so that boys could easily and conveniently climb it, made it more attractive, and we think that, under all the circumstances, the defendant should have anticipated that some boy would have climbed it, either for the purpose of extricating a kite, or for some other youthful purpose.

We conclude that, under the modern view prevailing in Arizona and elsewhere, the doctrine of attractive nuisance does not require that the child be attracted by the same artificial condition that ultimately injures him. The trial court therefore erred as a matter of law in granting summary judgment for APS.

Because of this analysis, we do not discuss whether the record demonstrates the existence of a triable factual issue concerning whether it was the cat or the pole that induced Charlie to climb. *See* footnote 4, *supra,* and accompanying text. Further, because the factual record presented to the trial court was assembled primarily with reference to that narrow issue, we do not attempt to determine whether any of the criteria for liability actually contained in § 339 are met. *See generally Barnhizer v. Paradise Valley Unified School District,* 123 Ariz. 253, 599 P.2d 209 (1979); *Hartsock v. Bandhauer,* 158 Ariz. 591, 764 P.2d 352 (App.1988).

Because of our disposition of this appeal, we need not determine whether the supreme court's issuance of *Webster v. Culbertson,* 158 Ariz. 159, 761 P.2d 1063

protect the children.

(1988), permits the Browns to proceed against APS under *Restatement (Second) of Torts* § 337. On remand, the trial court may consider any motion brought pursuant to Rule 15, Arizona Rules of Civil Procedure.

Accordingly, the trial court's summary judgment is reversed and remanded for proceedings consistent with this opinion.

CONTRERAS, P.J., and McGREGOR, J., concur.